**Edward J. ROEPSCH, Plaintiff,**

**v.**

**Lloyd BENTSEN, in his capacity as Secretary of the Department of Treasury,[1] Defendant.**

**No. 91–C–1232.**

United States District Court, E.D. Wisconsin.

March 21, 1994.

---

1. Pursuant to Fed.R.Civ.P. 25(d)(1), Secretary Lloyd Bentsen is hereby substituted in place of Nicholas F. Brady.

Edward J. Roepsch, Roepsch Law Offices, Milwaukee, WI, for plaintiff.

Charles A. Guadagnino, Asst. U.S. Atty., Milwaukee, WI, for defendant.

## DECISION AND ORDER

RANDA, District Judge.

This matter comes before the Court on pro se plaintiff Edward J. Roepsch's ("plaintiff") motions to remove attorney William P. Leh-man from representation of the Secretary of the Treasury (interchangeably, "defendant" or "Secretary") and for an order requiring the United States Attorney to demonstrate its authority to proceed on behalf of the Secretary. In addition, the defendant has moved for partial dismissal or, alternatively, for judgment on the pleadings. For the reasons set forth below, plaintiff's motions are denied and defendant's motions are granted in part and denied in part.

## FACTUAL BACKGROUND

From approximately June of 1972 until his resignation on November 30, 1989, plaintiff was employed as an attorney by the Midwest Region District Counsel of the Internal Revenue Service, Department of Treasury. Plaintiff alleges a continuing pattern of discrimination beginning in 1987 when he was denied a promotion to a GS–15 position. (Complaint, ¶ 12). In addition, plaintiff alleges that he resigned under duress after being subjected to less favorable working conditions than other employees because of his race, color, age [2], in retaliation for assisting a minority employee process a work grievance, and in retaliation for his own use of the EEO process. (Complaint, ¶¶ 13, 14a–w).

Plaintiff's assistance of the minority employee occurred on or about December 22, 1988. On or about April 27, 1989, plaintiff filed his first formal EEO complaint (Agency Case 89–3079). Five more were to follow: June 21, 1989 (Agency Case 89–3090); June 22, 1989 (Agency Case 89–3001); October 2, 1989 (Agency Case 90–3001); November 8, 1989 (Agency Case 89–3023); January 10, 1990 (Agency Case 89–3028). Each EEO complaint alleges discrimination based on age, color, race, retaliation for assisting the minority employee, and retaliation for his use of the EEO complaints process, as well as filing the work grievances. After Treasury issued two proposed disposition letters finding no discrimination with respect to all six complaints, plaintiff, on March 29, 1990, filed his request for a hearing before the Equal Employment Opportunity Commission

---

**2.** Plaintiff was born on October 26, 1945.

(EEOC) for Case Nos. 89–3079, 89–3089, 89–3090, and 90–3001. On June 4, 1990, the plaintiff filed his request for a hearing before the EEOC for Agency Case Nos. 90–3023 and 90–3028. A nineteen (19) day hearing was held in late 1990. On October 3, 1991, the EEOC issued its decision, recommending that Treasury enter a final agency decision of no discrimination. Plaintiff filed this suit on November 15, 1991.

### Plaintiff's Motions

Plaintiff has filed two motions regarding defense counsel which appear to be born of the same frustration. First, plaintiff seeks the removal of attorney William P. Lehman from his representation of the defendant or from appearing "of counsel" in this case. As grounds therefore, plaintiff argues that Lehman, IRS assistant regional counsel, and Denis Conlon, regional counsel (and a former defendant in this case) are "illegally" involved in this case. According to plaintiff, both Lehman and Conlon, through the Regional Complaints Center, were initially responsible for investigating the plaintiff's EEO complaints. Further, Lehman, who "reports directly" to Conlon, also represented the Secretary of Treasury at the hearing despite this "obvious conflict of interest". In short, plaintiff argues that because he intends to call Lehman as a witness at trial, Lehman should not be allowed to appear as an attorney or as "of counsel" in this case. Plaintiff intends to question attorney Lehman about two distinct matters, neither of which appears relevant. The first concerns a meeting which Lehman held with employees of the Milwaukee District Counsel's office at which Lehman allegedly attempted to intimidate or coerce witnesses who were expected to testify at the EEOC hearings. In support of his motion, plaintiff asserts that, "[a]t least one material witness, Attorney James P. Klein ... testified ... that he felt intimidated by this situation". (Plaintiff's brief at 2) Plaintiff's attachment of the hearing transcript flatly contradicts this assertion. With respect to the meeting that Lehman was involved in, the transcript provides:

Q. Besides the fact that the meeting was mandatory, was there anything else in-

volved in the meeting that you felt was in any way intimidating?

A. Honestly, no. I would say no.

(Exhibit 1, Tr. p. 3250).

From the above, there appears to be no substance to the plaintiff's charge that Lehman acted improperly in conducting the employee meeting. As a second basis for having Lehman removed as counsel, plaintiff argues that during the EEOC hearing Lehman "conferred and advised Denis J. Conlon as to what to say". (Plaintiff's brief at 2). A review of the relevant portions of the transcript indicates that plaintiff's argument is without merit. The excerpts do not support an argument that Lehman engaged in improper "coaching", and even if he did, there is simply no basis for that matter to be revisited in this case. Accordingly, there is no reason to conclude that Lehman will be a witness in this case.

Plaintiff's second motion seeks a court order requiring the United States Attorney to "provide evidence of [its] authorization to represent the defendant in this proceeding and ordered [ ] not to be directed and controlled by Denis J. Conlon, his attorney, William P. Lehman, and other employees of the Office of Counsel, IRS". Plaintiff alleges the following:

[When] plaintiff attempted to settle this case, ... [the Assistant United States Attorney] notified plaintiff that she did not confer with the defendant, Nicholas F. Brady, or his office concerning this case. Instead, she apparently conferred with Attorney William O. Lehman, who reports directly to Denis J. Conlon, Regional Counsel, IRS, one of the individuals who is charged with committing the alleged illegal discriminatory and retaliatory acts in this case and who previously illegally represented Mr. Colon, a witness, and the Secretary of Treasury during the EEOC hearing.

(Plaintiff's brief at 2).

It appears from these two motions that plaintiff thinks the individuals who allegedly discriminated against him, and who are apparently directing the defense of this case, might be less willing to settle the case than some-

one from the Secretary's office. It is not within the Court's power to order the Secretary to defend this case in a particular fashion or with particular counsel. Whether the Regional Counsel and the United States Attorney are satisfactorily representing the Secretary is a question which neither the plaintiff nor the Court need concern itself. As plaintiff has submitted no authority to support his requested relief, and the Court is not persuaded by his arguments, the motions are denied.

### Defendant's Motions

■ Defendant's motion pursuant to Fed. R.Civ.P. 12(b)(1), (6) and (c) involve a number of distinct issues. A motion for judgment, pursuant to Rule 12(c), is subject to the same standard as a Rule 12(b)(6) motion to dismiss, i.e., dismissal is warranted if it appears beyond doubt that the plaintiff can not prove any facts that would entitle him to relief. *Thomason v. Nachtrieb,* 888 F.2d 1202, 1204 (7th Cir.1989). First, the defendant argues that certain allegations of the plaintiff's complaint are not before this Court as they were not raised on the administrative level. Second, defendant seeks a ruling from the Court that plaintiff's Title VII allegations are not covered by the Civil Rights Act of 1991. Third, defendant argues that plaintiff is not entitled to a jury trial, compensatory or punitive damages under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633. Fourth, defendant moves to strike plaintiff's request for attorney's fees on the grounds that a pro se plaintiff is not so entitled. Fifth, defendant moves to strike Count III of the complaint which sets forth a claim pursuant to the Back Pay Act, 5 U.S.C. § 5596. Finally, defendant moves to dismiss plaintiff's claim for relief which seeks prejudgment interest with respect to back pay and sick leave.

### 1. Exhaustion of Administrative Remedies.

**Paragraph 14 of the Complaint.**

■ The defendant has moved to dismiss certain allegations of the plaintiff's complaint for failing to raise them administratively. "This Court's jurisdiction extends only [to] the 11 issues addressed in the two PDLs[3] ..." (Defendant's brief at 10–11). As a general rule, a plaintiff may not bring a Title VII or ADEA claim that is beyond the scope of his EEOC charge. *Taylor v. Western and Southern Life. Ins. Co.,* 966 F.2d 1188, 1194 (7th Cir.1992) (Title VII) and *Kristufek v. Hussmann Foodservice Co.,* 985 F.2d 364 (7th Cir.1993) (ADEA). However, "the complaint ... may properly encompass any ... discrimination like or reasonably related to the allegations of the charge and growing out of such allegations." *Jenkins v. Blue Cross Mut. Hospital Ins., Inc.,* 538 F.2d 164 (7th Cir.1976), *cert. denied,* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976); *Babrocky v. Jewel Food Co.,* 773 F.2d 857, 864 n. 2 (7th Cir.1985). ("In cases in which the EEOC's investigation was overly narrow, the proper inquiry would be into what EEOC investigation could reasonably be expected to grow from the original complaint.") Contrary to the defendant's argument, it is clear from the foregoing that the proposed disposition letters do not limit the scope of the plaintiff's subsequent complaint in this Court. A review of ¶ 14 of plaintiff's complaint indicates that substantially all of the allegations contained therein, even if not specifically asserted, "reasonably grow out of" the EEO complaints. Defendant objects to the following portions of ¶ 14: subsections b, c, e, f, h, k (the portions dealing with a reprimand), l, m, n, o, p, q, r, s, u, and v. (Defendant's brief at 11). The various incidents which are alleged should not be viewed as independent violations of Title VII or the ADEA. Instead, each subparagraph sets forth incidents which go to plaintiff's ultimate claims, i.e., that he was subjected to less favorable conditions and terms of employment, constructively discharged, and retaliated against—all because of his age, race, color, and for utilizing the EEO procedures on his own, as well as another's behalf. Because each of these types of discrimination was alleged to this extent at the administrative level, plaintiff is deemed to have exhausted his administrative

---

**3.** PDL is the acronym for "proposed disposition letter".

remedies with respect thereto. That each of the individual incidents was not specifically addressed does not preclude plaintiff from presenting them in this case. Accordingly, defendant's motion to dismiss these portions of ¶ 14 of the complaint is denied.

### Paragraph 23 of the Complaint.

 With respect to paragraph 23, which alleges discrimination extending "from 1987", the defendant's motion is granted. As stated above, both Title VII and the ADEA require a federal government employee to pursue his discrimination claims on the administrative level prior to bringing suit in federal court. The administrative remedies requirement is mandatory. *Brown v. General Services Administration,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). Pursuant to 29 C.F.R. § 1613.214(a)(1)(i), the employee must bring the allegedly discriminatory conduct to the attention of the Equal Employment Opportunity counselor within thirty (30) days of the event. These regulations apply whether an employee is alleging a Title VII discrimination, *Sims v. Heckler,* 725 F.2d 1143 (7th Cir.1984), or an ADEA violation, *Kontos v. United States Dept. of Labor,* 826 F.2d 573 (7th Cir.1987).[4] The Seventh Circuit recently reversed its prior distinction between private and federal defendants and ruled that these administrative time requirements are not jurisdictional with respect to Title VII. *Rennie v. Garrett,* 896 F.2d 1057 (7th Cir.1990). Therefore, principles of equitable tolling may be applied. *Id.* at 1062. However, the Seventh Circuit subsequently declined to extend *Rennie* to the filing requirements of the ADEA. *McGinty v. United States Dept. of Army,* 900 F.2d 1114, 1118 (7th Cir.1990). The Court need not examine the significance of this distinction because, even assuming the ADEA (like the Title VII) time limits are not jurisdictional, the plaintiff has failed to demonstrate any of the grounds recognized by the regulations or the case law for the invocation of equitable principles.

29 C.F.R. § 1613.214(a)(4) provides:

> The agency shall extend the time limits in this section when the complainant shows that he/she was not notified of the time limits in this section when the complainant shows that he/she was not otherwise aware of them, was prevented by circumstances beyond the complainant's control from submitting the matter within the time limits; or for other reasons considered sufficient by the agency.

Plaintiff has not asserted that he was unaware of these time limits. Instead, he argues that the defendant deliberately concealed that "it was conspiring to discriminate ... [and should be] estopped from asserting the untimeliness of the employee charge when, as in the instant case, the agency concealed information from ... the plaintiff". In support of this argument plaintiff cites *Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F.2d 924 (5th Cir.1975). *Kontos* suggests that the "prudent person" analysis of *Reeb* might be inappropriate in a case where § 1613.2142(a)(1)(i) is at issue. *Kontos* at 577. Even if it were, plaintiff's reliance upon *Reeb* is misplaced.

 Because plaintiff's first EEO complaint was filed on April 28, 1989, allegations concerning discrimination occurring more than thirty (30) days prior thereto are untimely unless principles of equity save them. Plaintiff argues that he was unaware of the discriminatory nature of the defendant's actions until the administrative hearing and therefore, this Court may review allegations of discrimination which extend as far back as 1987. The 1987 incident concerns the defendant's failure to promote the plaintiff to a GS–15 position. Plaintiff asserts that prior to the hearing, he "reasonably believed" that the denial was a "result of misunderstanding

---

4. Unlike Title VII, the ADEA provides a federal employee with two methods of pursuing his claims on the administrative level, 29 U.S.C. § 633a(c) and (d). Subsection (d) provides a "fast-track" method for an employee seeking to bypass administrative review. Even so, "no civil action may be commenced ... until the individual has given the Commission not less than thirty days' notice of an intent to file such action".

Further, notice to the Commission "shall be filed within one-hundred and eighty days after the alleged unlawful practice occurred". While subsection (d) provides a longer time period in which to notify the EEO Counselor of the discriminatory incident, plaintiff clearly chose to pursue his administrative remedies under subsection (c) and therefore the 30 day time limit of 29 C.F.R. § 1613.214(a)(1)(i) is applicable.

and personality conflicts". (Plaintiff's opposition at 9) Plaintiff refers the Court to the language of 29 C.F.R. § 1613.214(a)(1)(i) which requires the complaint to bring the matter to the attention of the EEO Counselor, "within 30 calendar days ... of the alleged discriminatory event ... or the date the aggrieved person knew or reasonably should have known of the discriminatory event or personnel action." Plaintiff construes this section to mean that until he knew or had reason to believe that the adverse actions were discriminatory, the clock does not begin to run. Plaintiff's position is without merit. The plain language of the regulation does not permit the complainant to delay until he realizes or knows that the personnel action or event was discriminatory. Rather, the clock begins to run when the complainant knows or reasonably should have known of the "event" or "personnel action" which gave rise to the discrimination.

In *Reeb* the Fifth Circuit construed the then ninety (90) day filing limit of 42 U.S.C. § 2000e–5(e) and concluded that the plaintiff was misled as to the reasons for her termination thereby preventing her from discovery of the potential discrimination. The plaintiff in *Reeb* was informed that she would not be renewed because of a funding shortage, effective September 24, 1969; a reason she readily accepted because her prior employment with the defendant had terminated for the same reasons. *Id.* at 930. It was not until sometime in the spring of 1970 that plaintiff learned her position had in fact been filled in November of 1969 by a less qualified male. The distinction between *Reeb* and this case is clear. In *Reeb*, it was not the "fact" of defendant's discriminatory purpose that was unknown to the plaintiff. Instead, the unknown fact was the hiring of the less qualified male, a fact which would have suggested to the plaintiff the falsity of the reason given for her termination. Unlike *Reeb*, plaintiff

does not allege that facts or circumstances which might have supported a claim of discrimination were withheld. Rather, plaintiff alleges that the defendant withheld a discriminatory purpose or state of mind. Plaintiff's construction renders the limitation of § 1613.214(a)(1)(i) meaningless as the "fact" of discriminatory intent is likely to be concealed in every case.[5]

Plaintiff has offered no compelling reason why the thirty (30) day filing period contained in § 1612.214(a)(1)(i) should not bar the Title VII and ADEA allegations which date "from 1987". Failure to give timely notice to the EEO Counselor without adequate justification requires dismissal of those portions of plaintiff's complaint. *Barrett v. Frank*, 776 F.Supp. 1312, 1314 (N.D.Ill.1991). Accordingly, defendant's motion to dismiss the Title VII and ADEA allegations contained in ¶ 23, which concern events that occurred more than thirty (30) days prior to April 28, 1989, is granted.

### 2. The Civil Rights Act of 1991.

It is settled law in this Circuit that the provisions of the Civil Rights Act of 1991 do not apply to this case. "[C]ourts should look to the time of the conduct giving rise to the claim to determine the statute's applicability. Simply put, if the conduct took place before the statute's enactment, it is not covered; if after, it is covered." *Mojica v. Gannett Co.*, 7 F.3d 552, 558 (7th Cir.1993). Plaintiff alleges that he was constructively discharged on November 30, 1989. The effective date of the Act was November 21, 1991. Until contrary authority from the Supreme Court is forthcoming[6], this Court is bound to follow the clear holding of *Mojica*. Accordingly, defendant's motion to strike those portions of plaintiff's complaint which invoke the provisions of the Civil Rights Act of 1991 is granted.

---

5. Plaintiff's interpretation raises the interesting question of whether an "allegation" of discriminatory intent is the same as a "fact" thereof. Clearly the "fact" of discriminatory intent is not yet established. Accordingly, under plaintiff's interpretation, the time clock of § 1613.214(a)(1)(i) should not commence running until the Court (or the jury in another case) finds for the plaintiff.

6. The Supreme Court has granted certiorari to both the Fifth and Sixth Circuits on the applicability of the Act to cases pending at the time of enactment. *Landgraf v. USI Film Prods.*, 968 F.2d 427 (5th Cir.1992) (Title VII) and *Harvis v. Roadway Express, Inc.*, 973 F.2d 490 (6th Cir. 1992) (§ 1981), *cert. granted*, — U.S. —, 113 S.Ct. 1250, 122 L.Ed.2d 649 (1993).

### 3. The ADEA, 29 U.S.C. § 633.

█ Plaintiff concedes that a federal employee bringing suit under the ADEA is not entitled to a jury trial. (Plaintiff's opposition at 11); *Lehman v. Nakshian*, 453 U.S. 156, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981). Plaintiff also concedes that he is not entitled to compensatory or punitive damages. (*Id.*); *Pfeiffer v. Essex Wire Corp.*, 682 F.2d 684 (7th Cir.), *cert. denied*, 459 U.S. 1039, 103 S.Ct. 453, 74 L.Ed.2d 606 (1982). Plaintiff argues that defendant's motion to strike his request for attorneys fees is premature as plaintiff "has not request (sic) any specific attorney fees".[7] (*Id.*) It is clear that attorney fees are not recoverable against the federal government under the ADEA because of the doctrine of sovereign immunity. Even if they were recoverable, a pro se plaintiff, even one who is an attorney, is not entitled to fees. *Kay v. Ehrler*, 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991); *see also*, *Chowaniec v. Arlington Park Race Track, Ltd.*, 934 F.2d 128 (7th Cir.1991). In *Kay*, the Supreme Court ruled that the statutory concern behind the Civil Rights Attorneys Fees Act of 1976, codified at 42 U.S.C. § 1988, is to further "the successful prosecution of meritorious claims ... by a rule that creates an incentive to retain counsel in every such case". *Id.* at 438, 111 S.Ct. at 1438. Based on the foregoing, defendant's motion is granted.

### 4. The Back Pay Act.

█ Defendant has moved to dismiss Count III of the Complaint on the grounds that the Back Pay Act, codified at 5 U.S.C. § 5596, does not support an independent cause of action. Plaintiff argues in opposition that the Act permits the payment of back pay, attorneys fees and prejudgment interest. The pertinent provision:

> An employee of an agency who, on the basis of a timely appeal or an administrative determination ... is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjusti-

fied or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials ... [is entitled to back pay].

From the plain language of the statute it is clear that recovery under the Act is dependant upon a finding that there has been an "unjustified or unwarranted personnel action". *United States v. Testan*, 424 U.S. 392, 407, 96 S.Ct. 948, 957, 47 L.Ed.2d 114 (1976) (Holding that the Back Pay Act does not create a substantive right); *See also, Smith v. Brady*, 744 F.Supp. 925, 927 (N.D.Cal. 1990) ("By its own terms, the statute does not create an independent cause of action.") Accordingly, defendant's motion to strike Count III of the complaint is granted.

### 5. Prejudgment Interest.

█ Defendant has moved to dismiss all claims for prejudgment interest. "The no-interest rule is to the effect that interest cannot be recovered in a suit against the Government in the absence of an express waiver of sovereign immunity from an award of interest." *Library of Congress v. Shaw*, 478 U.S. 310, 311, 106 S.Ct. 2957, 2959, 92 L.Ed.2d 250 (1986). As the Fifth Circuit stated in *Smith v. Office of Personnel Management*, 778 F.2d 258 (5th Cir.1985), "[a] waiver of sovereign immunity must be unequivocally expressed, *United States v. Mitchell*, 445 U.S. 535, 538 [100 S.Ct. 1349, 1351, 63 L.Ed.2d 607] (1980), and the conditions on which the government consents to be sued must be strictly observed and exceptions thereto are not to be implied. *Lehman v. Nakshian*, 453 U.S. 156, 160 [101 S.Ct. 2698, 2701, 69 L.Ed.2d 548] (1981)". Plaintiff asserts that he is entitled to prejudgment interest pursuant to the Back Pay Act as "Congress in the Back Pay Act specifically waived so-called 'sovereign immunity' with respect to the payment of prejudgment interest ... where the employees prevailed for wrongful discharge under Title VII and ADEA". (Plaintiff's opposition at 12). While plaintiff cites no authority for this argument, there is case law which suggests

---

7. The defendant has offered two arguments regarding attorney fees. The first concerns plaintiff's request under the ADEA as set forth in Count One. The second concerns plaintiff's request for attorney fees as set forth in his request for relief.

this conclusion. Nevertheless, this Court declines to follow the reasoning contained in those cases.

The Supreme Court pronounced in *Shaw, supra,* that the doctrine of sovereign immunity shields the federal government from interest awards absent an express statutory waiver. In *Loeffler v. Frank,* 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988), however, the Supreme Court concluded that the requisite express waiver could be supplied by a separate statute. While Title VII clearly does not permit prejudgment interest awards against governmental entities, the Supreme Court held that prejudgment interest awards against the Postal Service were recoverable by referencing the 1970 Postal Reorganization Act, 39 U.S.C. § 401(1), which permitted the Postal Service to "sue and be sued". *Id.* at 555–59, 108 S.Ct. at 1969–71. From that reasoning, the Court of Appeals for the District of Columbia Circuit concluded that there was "no convincing reason why the Back Pay Act does not supply the immunity waiver prescription absent in Title VII, just as the Postal Reorganization Act does". *Brown v. Secretary of Army,* 918 F.2d 214, 216 (D.C.Cir.1990) (Ginsberg, J.), *cert. denied, Brown v. Stone,* —— U.S. ——, 112 S.Ct. 57, 116 L.Ed.2d 33 (1991); *Lee v. Brady,* 741 F.Supp. 990 (D.D.C.1990); *see also, Smith v. Brady,* 744 F.Supp. 925 (N.D.Cal. 1990); *Hearn v. Turnage,* 739 F.Supp. 1312, 1313 (E.D.Wis.1990) (Reynolds, J.) ("The Back Pay Act definitely renders the VA liable for prejudgment interest on back pay ... applicable to Hearn's Title VII claim ...".).[8] While all of the cited cases followed *Loeffler's* lead and located the express waiver in a separate statute—The Back Pay Act—only *Smith* and *Hearn* acknowledge *Loeffler's* discussion of the unique status of the Postal Service. "Congress waived the Postal Service's sovereign immunity in the Postal Reorganization Act by providing the Postal Service with the status of a private commercial enterprise." *Hearn* at 1312–13. "Congress had launched [the Postal Service] into the commercial world and waived its immunity from interest awards ... to the extent that interest is receivable against a private party

as a normal incident of suit." *Smith* at 929. None of the cited cases involved the Postal Service as a defendant: *Brown*—Army; *Lee*—Treasury; *Smith*—Treasury; and *Hearn*—Administrator of Veteran Affairs. While all of the cases pay tribute to the rule that sovereign immunity must be "expressly waived", none pause to consider the quasi-private nature of the Postal Service or the fact that the "separate statute" referenced by the Supreme Court specifically concerned the Postal Service and its power to "sue or be sued". By contrast, the Back Pay Act is of questionable relevance. As the Supreme Court explained in *Testan, supra:*

> The statute's language was intended to provide a monetary remedy for wrongful reductions in grade, removals, suspensions, and 'other unwarranted or unjustified actions affecting pay or allowances (that) could occur in the course of reassignments and change from full-time to part-time work.' * * * Congress, of course, now has provided specifically in the Lloyd–Lafollette Act, 5 U.S.C. § 7501, for administrative review of a claim of wrongful adverse action, and in the Back Pay Act for the award of money damages for a wrongful deprivation of pay.

*Id.* 424 U.S. at 405–406, 96 S.Ct. at 957.

First, by its very title, the Act applies to "[b]ack pay due to unjustified personnel action". It is questionable at the very least to categorize violations of constitutionally protected civil rights as "adverse personnel actions". If the Back Pay Act, enacted in 1966, was intended to encompass civil rights violations, why did Congress amend Title VII in 1972 to permit employees to sue the federal government? It makes no logical, historical, or interpretive sense to graft the provisions of the Back Pay Act onto the civil rights statutes. *Loeffler's* impact should be limited to the nature of the governmental entity sued and the existence of a statute specifically concerned with that entity.

Second, *Smith* and *Brown* rely on regulations issued by the Office of Personnel Management ("OPM"), 5 C.F.R. § 550.901 *et seq.,*

---

**8.** The Back Pay Act was amended in 1987 to provide that any amount payable under the statute be payable with interest. 5 U.S.C. § 5596(b)(2).

to conclude that the "appropriate authority" under the Act encompasses "courts" and that "adverse personnel actions" include a "discrimination complaint" and therefore, the provisions of the Back Pay Act apply to actions under Title VII. *Smith* at 928; *Brown* at 216–217. While the Act does direct the OPM to "prescribe regulations to carry out this section" (§ 5596(c)), it would be an unconstitutional delegation of power for the OPM to "expressly waive" the federal government's sovereign immunity with respect to Title VII or ADEA claims by federal employees. Of significance in this regard is that the Back Pay Act itself, not its OPM regulations, waives immunity with respect to prejudgment interest for prevailing Back Pay Act plaintiffs. Notably, if Congress did not permit the OPM to waive immunity with respect to the Act itself, it seems unlikely that Congress empowered the OPM to do so with respect to another statute. While the OPM regulations may not be unreasonable in and of themselves, this Court declines to rely upon them to support an interpretation that they "expressly waive" the federal government's sovereign immunity under Title VII or the ADEA.

In conclusion, the Court declines to rely upon OPM regulations concerning the Back Pay Act to supply Congress' "express waiver" of sovereign immunity with respect to prejudgment interest in a Title VII or ADEA case. Defendant's motion to strike plaintiff's request for prejudgment interest is granted.

**NOW THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Plaintiff's motion to remove attorney William P. Lehman from his representation of the defendant or appearing "of counsel" is **DENIED;**

2. Plaintiff's motion to require the United States Attorney to demonstrate its authorization to represent the defendant and request for an order that prosecution of this case not to be directed by Denis J. Conlon, William P. Lehman, or other employees of the Office of Counsel, IRS is **DENIED;**

3. Defendant's motion to dismiss the allegations contained in subparts b, c, e, f, h, k (the portions dealing with a reprimand), l, m, n, o, p, q, r, s, u, and v of paragraph 14 of the Complaint is **DENIED;**

4. Defendant's motion to dismiss those portions of paragraph 23 of the Complaint which allege discriminatory treatment which occurred more than thirty (30) days prior to the filing of the first EEO complaint on April 28, 1989 is **GRANTED;**

5. Defendant's motion to strike those portions of the Complaint which invoke the provisions of The Civil Rights Act of 1991 is **GRANTED;**

6. Defendant's motion to dismiss plaintiff's requests under the ADEA for a jury trial, compensatory and punitive damages, and attorneys fees is **GRANTED;**

7. Defendant's motion to strike plaintiff's Back Pay Act claim (Count III) is **GRANTED;** and

8. Defendant's motion to strike plaintiff's request for prejudgment interest is **GRANTED.**

**SO ORDERED.**