**Robert E. HILL, Plaintiff,**

v.

**Marvin RUNYON, Postmaster General, United States Postal Service, Defendant.**

**No. 96 C 1916.**

United States District Court, N.D. Illinois, Eastern Division.

March 11, 1997.

James A. Ebert, Jones & Granger, Villa Park, IL, Waite P. Stuhl, Law Office of Waite P. Stuhl, Westwood, MA, Ernest C. Hadley, Joleen Payeur Olsen, Law Offices of E.C. Hadley, W. Wareham, MA, for Robert E. Hill.

Jack Donatelli, U.S. Attorney's Office, Chicago, IL, for Marvin Runyon.

## *MEMORANDUM OPINION AND ORDER*

BUCKLO, District Judge.

The plaintiff, Robert E. Hill, has sued his employer, the Postmaster General of the United States Post Office, Marvin Runyon ("Post Office"), for gender, race, and age discrimination. The defendant has moved to dismiss or, in the alternative, for summary judgment. For the following reasons, summary judgment on Mr. Hill's claim that he was not selected for one of the Postal Career Executive Service positions is entered in favor of the defendant because these claims are barred by the statute of limitations. Summary judgment is also entered against Mr. Hill on his ADEA claims involving the Executive and Administrative Schedule positions. Mr. Hill's remaining claims involving Executive and Administrative Schedule positions

are dismissed without prejudice since he has failed to exhaust his administrative remedies.

## Background [1]

Born in 1932, Mr. Hill is a white male. The executive level workers at the Post Office are divided into two grades and pay schedules. The top executive tier is known as the Postal Career Executive Service ("PCES"). The tier beneath PCES is known as the Executive and Administrative Schedule ("EAS"). There are several grades within each tier. In 1992 and 1993, the Post office underwent a restructuring.

At the beginning of restructuring, Mr. Hill was a General Manager, Real Estate, grade level PCES–01 in the Chicago office of the Illinois Facilities Service Center ("Facilities").[2] Mr. Hill claims that the defendant's failure to select him for any PCES and EAS positions during restructuring constituted gender, racial, and age discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16, and the Age Discrimination in Employment Act ("ADEA").[3] 29 U.S.C. § 633a. The Post Office has moved to dismiss or, in the alternative, for summary judgment, arguing that Mr. Hill's PCES-related claims are time-barred, that I lack jurisdiction over the EAS-related claims because the plaintiff failed to exhaust administrative remedies, and that Mr. Hill has not raised an inference of discrimination with respect to his age claims.

## 18 PCES Managerial Positions

■ Post Office employees "who believe [that] they have been discriminated against on the basis of race, color, ... sex, ... [or] age ... must ... initiate contact with a[n EEO] Counselor within 45 days ... of the effective date of the [personnel] action" claimed to be discriminatory. 29 C.F.R. § 1614.105(a)(1); *Johnson v. Runyon*, 47 F.3d 911, 917 (7th Cir.1995). In the instant case, Mr. Hill claims that he was not selected for one of the 18 PCES managerial positions. The dates on which these positions were filled are the effective dates of the relevant personnel actions. *Jakubiak v. Perry*, 101 F.3d 23, 26–27 (4th Cir.1996). November 28, 1992 and December 12, 1992 were the dates for the selection of these managers.[4] Therefore, the 45–day period began to run, at the latest, on December 12, 1992. Mr. Hill filed an EEO Request for Counseling, complaining of his failure to be selected for the 18 PCES managerial positions, on February 10, 1993. Accordingly, Mr. Hill did not initiate his con-

---

1. The following facts are taken from the defendant's 12(M) Statement. In his 12(N) Response, Mr. Hill does not expressly dispute any statement except paragraph 10. With respect to the remainder, Mr. Hill either agrees with the defendant's statement, or agrees and submits further information, or asserts that he lacks sufficient information to admit or deny and submits further information. In general terms in his memorandum, Mr. Hill also states that discovery is not yet completed and he may supplement his response after discovery has been completed. Apart from the fact that this statement was not contained in an affidavit pursuant to Rule 56(f), Fed.R.Civ.P., discovery closed (after several extensions) on February 7, 1997, but Mr. Hill did not file any supplement to his response. Thus, since none of defendant's facts are contradicted, they are admitted. N.D. Local R. 12(N)(3) ("[a]ll material facts set forth in the statement required by the moving party will be deemed admitted unless controverted by the statement of the opposing party").

Plaintiff's additional facts, while not authorized by N.D. Local R. 12(N)(3)(a) (the place for additional facts is a *separate statement*, pursuant to N.D. Local R. 12(N)(3)(b)), will be considered.

2. In October 1993, the plaintiff was placed on a temporary detail as a PCES on Special Assignment. He retained his grade and salary, and remained in Chicago. Effective July 8, 1995, pursuant to a reduction-in-force (RIF), the plaintiff was transferred to an EAS–25 level position, Manager, Real Estate. Notwithstanding the change in grade, the plaintiff retained his PCES-level salary and remained in Chicago. This is the position he presently occupies. Mr. Hill appealed the detail assignment to the Merit Systems Protection Board (MSPB). The MSPB dismissed for lack of jurisdiction. Mr. Hill also appealed his July 1995 transfer, but withdrew that appeal.

3. The original complaint was filed on April 3, 1996. On December 23, 1996, I granted the plaintiff's motion to file an amended complaint in which he added a charge of retaliation. This count is not a subject of the instant motion.

4. Mr. Hill's 12(N) Response to this statement is that the plaintiff "lacks sufficient information to admit or deny." Thus, I deem this statement admitted. *See supra* note 1.

tact with an EEO counselor in a timely fashion. *Id.*

 The 45–day deadline "is construed as a statute of limitations and not as a jurisdictional prerequisite." *Johnson*, 47 F.3d at 917 (Title VII); *Bohac v. West*, 85 F.3d 306, 311 (7th Cir.1996) (ADEA). It will be extended

> when the individual shows [ (1) ] that he or she was not notified of the time limits and was not otherwise aware of them, [ (2) ] that he or she did not know and reasonably should not have known that the discriminatory ... personnel action occurred, [ (3) ] that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or [ (4) ] for other reasons considered sufficient by the agency or the Commission.

29 C.F.R. § 1614.105(a)(2). Although Mr. Hill is a non-movant in this summary judgment motion, he "has the burden of proof on this issue since [ ]he is claiming the benefit of an exception from the operation of a statute of limitations." *Mirza v. Department of Treasury*, 875 F.Supp. 513, 518 (N.D.Ill.1995) (quotation omitted). Mr. Hill cannot create a factual issue that he meets any of the four criteria for tolling the limitations period.

In a sworn affidavit of August 18, 1994, attached to Mr. Hill's submission to the Merit Systems Protection Board (MSPB), *see supra* note 2, the plaintiff stated that "[o]n November 19, 1992, Mr. Dennis Bryan, the current Manager, Chicago FSO, told me that

Headquarters Facilities Office had decided that I would not be selected or offered any position at any level in the restructured department. I was to stay in my office until I received a directed reassignment." [5] (Maclin Declaration, Ex. 15.) Nevertheless Mr. Hill now says that he "did not know and reasonably should not have known that the discriminatory ... personnel action occurred," 29 C.F.R. § 1614.105(a)(2), until he received the January 6, 1993 letter.[6] (Pl.'s Ex. 14.)

Mr. Hill argues that it was not reasonable for him to rely on Mr. Bryan's statement because, at the time of the conversation, selections were still being made. However, if he *knew* that selections were still being made, he surely had the means for finding out when the PCES managerial positions, in which he was interested, became filled. Mr. Hill also argues that Mr. Bryan did not have the authority to notify him that he had not been selected. The deposition of the Manager of Corporate Personnel, Stephen Leavey, contradicts this characterization of Mr. Bryan's scope of authority. (*See* Leavey Dep. at 140–41.) In addition, the January 6, 1993 letter, which the plaintiff credits with informing him of the discriminatory personnel actions, is signed by Mr. Bryan.[7]

Mr. Hill also contends that in November, he "did not have any reasonable suspicion of discrimination, as all of the PCES Facilities selectees were white males like himself." (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss or for Summ. J. at 50.) If the January 6, 1993 letter conveyed a critical piece of

---

**5.** Mr. Hill alleges the same facts in the instant complaint. (Compl. ¶ 12.)

**6.** Given the importance the plaintiff attaches to this letter, I quote it in its entirety:

> As you probably have noticed, the Career Transition Center for Chicago is now beginning to take form. This facility is here for your use during the transition, as well as the counseling and administrative services which are available to you.
>
> I realize that some of you have already been informally working with Jim Kacena of Lee Hecht Harrison (the career management firm which has been retained by the USPS); however, it would be of further help to your careers to attend their Career Transition Seminar.
>
> This seminar is planned to be conducted on Monday and Tuesday (January 11–12) by one

of Lee Hecht Harrison's certified trainers. It will meet from 8:30 a.m. to 4:30 p.m. on both days in the main Conference Room.

> The attached Orientation booklet explains, in more detail, what will be covered during that two-day period. I know that you will find this a valuable and insightful learning experience, and highly suggest that you attend. Any further questions, can be addressed to Jim Kacena, Extension 5362.

**7.** Mr. Hill also claims that Mr. Leavey testified that the January 6, 1993 letter was the *defendant's* "official notice" to him that he had not been selected for any position during the restructuring. Mr. Hill does not attach Mr. Leavey's deposition, making it impossible for me to verify this assertion. Given the content of the letter, *see supra* note 6, I find the assertion implausible.

information that the November 1992 conversation with Mr. Bryan omitted, and that information aroused the plaintiff's suspicion about discrimination, Mr. Hill's argument would be persuasive. *Johnson*, 47 F.3d at 920–21 (for purposes of suit under Rehabilitation Act, 45–day deadline extended until plaintiff received notification that she was terminated because of hypertension). However, Mr. Hill does not point to anything nor is there anything in the January 6 letter that conveys such information. *See supra* note 6; *see also Roepsch v. Bentsen*, 846 F.Supp. 1363, 1369 (E.D.Wis.1994).

Mr. Hill's broadly sweeping assertions such as that the Post Office did not follow its standard selection process, that it provided scant or incorrect information to its employees regarding restructuring, and that it did not inform the employees of their MSPB appeal rights cannot undermine the impact of his admission to his conversation with Mr. Bryan in November 1992. Mr. Bryan was Mr. Hill's superior. At the very least, this conversation put Mr. Hill on notice and enabled him to engage in the necessary investigation so as to learn the effective dates of selection of the 18 PCES managers. 29 C.F.R. § 1614.105(a)(2) ("reasonably should ... have known that the discriminatory ... personnel action occurred").[8]

The "continuing violation" doctrine does not help Mr. Hill. This doctrine "allows a plaintiff to get relief for a time-barred act by linking it with an act that is within the limitations period." *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 445 (7th Cir.1994) (quotation omitted). This doctrine recognizes that the discriminatory nature of an act may only become apparent in light of subsequent acts if an employer follows a covert practice of discrimination. *Id.* at 445–46. Here, Mr. Hill argues that he initiated timely contact with an EEO counselor regarding the EAS positions; he seeks to link these to the 18 PCES managerial positions. He argues that the defendant's restructuring, designed to protect women and minorities, constituted an on-going discrimination policy. The "continuing violation" doctrine is not available if the plaintiff "knows or with the exercise of reasonable diligence would have known after each act that it was discriminatory and had harmed him." *Moskowitz v. Trustees of Purdue Univ.*, 5 F.3d 279, 282 (7th Cir.1993). Even assuming, *arguendo*, that Mr. Hill's contact with an EEO counselor regarding the EAS positions was timely, in light of the immediately preceding discussion, he cannot rely on the "continuing violation" doctrine.

Mr. Hill argues that the defendant has not produced any evidence that he had constructive knowledge of the 45–day deadline. If this is Mr. Hill's attempt to satisfy the first prong of the tolling test in 29 C.F.R. § 1614.105(a)(2), it must fail. He has the burden on this issue of showing lack of knowledge and Mr. Hill nowhere argues that he "was not notified of the time limits and was not otherwise aware of them." *Id.*

Since Mr. Hill failed to comply with the 45–day deadline, 29 C.F.R. § 1614.105(a)(1), and failed to meet any of the four criteria for tolling the limitations period, 29 C.F.R. § 1614.105(a)(2), his claims with respect to the 18 PCES managerial positions are time-barred. Accordingly, defendant's motion for summary judgment on these claims is granted.[9]

---

8. In addition, the defendant submits an October 1, 1992 MEMORANDUM TO ALL FACILITIES EMPLOYEES, authored by Mitchell H. Gordon, Vice President of Facilities. The memorandum "announce[d] th[e] management team," which included the same 18 managerial PCES positions. (Johnson Declaration, Ex. 1.) Mr. Hill does not argue that he did not receive this memorandum. Its existence further undermines his argument that he did not know and reasonably should not have known about the alleged discriminatory personnel actions.

9. I have addressed the statute of limitations issue since this issue is applicable to all of Mr. Hill's

claims as to the PCES positions. Summary judgment on Mr. Hill's race and gender claims is also appropriate on the basis that Mr. Hill has presented no evidence to support a claim of discrimination on the basis of gender or race. There were only 18 PCES positions. All of them were filled by persons who, like Mr. Hill, were Caucasian males. Mr. Hill has produced no evidence that would support his argument that cases in which the fact that a position may have been filled by a person of like race or protected group as the plaintiff have any applicability to the present case.

*EAS Positions*

Federal regulations provide that "[a] complainant who has filed an individual complaint ... is authorized under title VII [and] ... the ADEA ... to file a civil action ... [a]fter 180 days from the date of filing an individual ... complaint if an appeal has not been filed and a final decision has not been issued." 29 C.F.R. § 1614.408(b). Mr. Hill filed the formal EEO Complaint of Discrimination in the Postal Service ("EEO complaint") in May 1993 and this suit on April 3, 1996. Defendant argues that, notwithstanding the passage of 180 days, this court lacks subject matter jurisdiction because Mr. Hill failed to exhaust his administrative remedies as to the EAS positions.

██ Under Title VII, a federal employee must exhaust administrative remedies prior to filing suit in federal court. *Pack v. Marsh*, 986 F.2d 1155, 1157 (7th Cir.1993); *Mirza*, 875 F.Supp. at 520. By contrast, under the ADEA, this Circuit "no longer require[s] that administrative remedies, once begun, must be exhausted before suit is filed in district court." *Bohac*, 85 F.3d at 311 (citing *Adler v. Espy*, 35 F.3d 263 (7th Cir. 1994)).

The record shows the following. Mr. Hill's EEO complaint was dated May 11, 1993 and was received by the EEO Office on May 17, 1993. In this complaint, Mr. Hill, through his attorney, Joleen Payeur Olsen, complained that "he had not been selected for any of the new positions in his professional field after the U.S. Postal Service had completed its reorganization. All of the selectees for the various positions were younger than Mr. Hill, and many of the selectees were of a different race, color, and sex than Mr. Hill." Mr. Hill identified the Vice President, Mitchell H. Gordon, and the 18 PCES managers, *see supra*, as the officials responsible for the alleged discriminatory decisions, and sought as one of his remedies an appointment to a "comparable position." (Maclin Declaration, Ex. 2.)

In October 1993, Mr. Hill was assigned as a PCES on Special Assignment to a temporary detail as a Real Estate Specialist, EAS 16/22. On November 19, 1993, he filed an appeal with the Merit Systems Protection Board (MSPB) on the grounds that this assignment, as well as his nonselection for any position during the defendant's restructuring, was discriminatory. On the same day, Mr. Hill's attorney informed the EEO Office of his MSPB appeal. (Maclin Declaration, Ex. 4.)

On November 18, 1993, the EEO Office accepted Mr. Hill's EEO complaint for investigation. Its understanding was that Mr. Hill was complaining that he had not been selected for the 18 PCES managerial positions. The EEO Office indicated in a letter dated December 8, 1993 that if "the complainant does not agree with the defined issue(s), s/he must provide us with sufficient reasons." [10] (Maclin Declaration, Ex. 3.) On February 14, 1994, Mr. Hill's attorney, Ms. Olsen, advised the EEO Office that

> the EEO process in [Mr. Hill's] ... complaint ... was terminated because of filing an appeal with the Merit Systems Protection Board (MSPB).... This case ... [is] no longer in the EEO forum. Th[i]s complaint[ ] w[as] transferred to the MSPB on November 19, 1993, and that transfer terminated the EEO process.... [T]he Agency should stop sending requests for affidavits and threatening my client[ ] with the dismissal of the[ ] complaint[ ], as that process was terminated several months ago....

(Maclin Declaration, Ex. 5.) In response, on February 18, 1994, the EEO Office informed Ms. Olsen that it was suspending any investigatory action on Mr. Hill's complaint until the MSPB determined the scope of its jurisdiction. (Maclin Declaration, Ex. 6.) On June 14, 1995, Mr. Hill requested that the EEO Office recommence the processing of his complaint since the MSPB's decision, dismissing his appeal for lack of jurisdiction, became final on March 15, 1995. (Maclin Declaration, Ex. 7.)

---

**10.** In a June 14, 1995 correspondence with the EEO Office, the plaintiff's counsel stated that "[t]he agency acknowledged receipt of the formal complaint and initially defined the issues on *November 18, 1993.*" (Maclin Declaration, Ex. 7) (emphasis added.)

On October 2, 1995, in response to Mr. Hill's request for a hearing before an EEOC Administrative Judge ("ALJ"), the EEO Office indicated that it was investigating the plaintiff's complaint. (Pl.'s Ex. 25.) On October 16, 1995, the EEO Office telephoned Mr. Hill's counsel to seek additional information. Ms. Olsen's response was that her "understanding [was] that [a] request for a[n EEOC] hearing terminated the investigatory stage of the EEO administrative process." (*Id.*) On November 14, 1995, the EEO Office again contacted Mr. Hill's counsel for clarification of the basis of the plaintiff's claim. In this communication, the EEO Office stated that

> [a] close review of the Formal Complaint causes some confusion. Under Item 9 on PS Form 2565, the Complainant names Mitchell H. Gordon and the Managers on attached Exhibit "A" as the responsible management officials. That list of manager positions in Exhibit "A" were shown in the acceptance letter, dated December 8, 1993, as those identified by the Complainant as the basis of his non-selection issue. You did not object to that statement of the issue. In his formal complaint, Mr. Hill does not identify any specific positions, but states, in pertinent part, ". . . on February 1, 1993, Mr. Hill became aware that he had not been selected for any of the new positions in his professional field . . ."
>
> Please inform me if the list of eighteen (18) positions shown in exhibit "A" constitutes the basis of his claim of discrimination, or if he intended to limit his claim to as yet undisclosed positions in the Real Estate field. . . .
>
> In addition, there is no information of any kind submitted by the Complainant to explain his request for compensatory damages. . . .
>
> It is my intention to continue with this investigation. To develop a complete and impartial factual record, as required by EEOC, it is imperative that your Client

complete an affidavit. I am extending the time limits for production of this affidavit. I seek your cooperation and that of Mr. Hill. . . .

(Maclin Declaration, Ex. 9.) Ms. Olsen's November 22, 1995 response was that she "do[es] not agree with the Agency's definition of the issues." She did not, however, provide the requested information.[11] (Maclin Declaration, Ex. 10.)

On January 19, 1996, upon Mr. Hill's request, an EEOC ALJ reviewed Mr. Hill's file and remanded his complaints to the EEO Office. The order stated that the "Complainant failed to provide the Agency with an affidavit. . . . [and that the] Complainant is required to clearly articulate to the Agency the issues and bases of his complaint." (Maclin Declaration, Ex. 11.) Pursuant to the above order, on January 29, 1996, the EEO Office again contacted Mr. Hill's counsel, asking her to "[s]pecify each individual issue, with date of occurrence, that comprises the instant complaint" and warning that "[f]ailure to comply with this request within fifteen calendar days from your receipt of this notification will result in .dismissal of this complaint for failure to cooperate." (Maclin Declaration, Ex. 12.)

On February 16, 1996, Ms. Olsen responded to the above request in the following manner:

> Mr. Hill's EEO complaint pertains to the two rounds of nationwide selections that occurred during the Agency's 1992–199[3] restructuring.
>
> In the first round of selections, the Agency selected *PCES employees* to be the managers of various departments and facilities. (See, the eighteen [18] positions referenced in the Agency's December 8, 1993, definition of the issues). Mr. Hill, although eligible, was not selected for any of these positions.
>
> Complainant believes that Messrs. Gordon, Wilson, Enverso, Anthony, Maxwell,

---

**11.** Specifically, Ms. Olsen stated that "[i]n any event, I believe that the attached correspondence from the Chicago District Office of the EEOC moots the issues raised in your November 14, 1995, letter. (Exhibit 5)" (Maclin Declaration, Ex. 10.) Neither the plaintiff nor the defendant furnished the "attached correspondence" for the court's use. However, Ms. Olsen's use of the word "moots" shows that whatever the "attached correspondence" contained, it was not designed to address the EEO Office's information request.

Wamsley, Blanchard, Ms. Elaine Johnson, and possibly others were involved in filling *those PCES positions.* The individuals who were selected for *those eighteen positions are identified in Exhibit A attached to Mr. Hill's formal complaint.*

In the second round of selections, the managers who were selected for those eighteen (18) positions selected PCES and EAS employees *for the various EAS positions* available in their respective installations.... Although eligible, Mr. Hill was also not selected for any of those positions anywhere in the United States....

(Maclin Declaration, Ex. 13) (emphasis added.) Ms. Olsen indicated that she could not provide any further specifics because such information was in the defendant's possession. (*Id.*) Later in February 1996, EEO again wrote to Ms. Olsen. (Pl.'s Ex. 26.) On March 12, 1996, Mr. Hill's counsel responded, emphasizing again that Mr. Hill was complaining about not being selected for any PCES and EAS positions, and elaborating on the defendant's selection process. (*Id.*) Less than a month later, on April 3, 1996, Mr. Hill filed the instant complaint in federal court.

■ Implicit in the requirement that a Title VII plaintiff exhaust administrative remedies is the expectation that the plaintiff will, in good faith, cooperate with the relevant agency. *Wade v. Secretary of Army,* 796 F.2d 1369, 1377 (11th Cir.1986). With respect to the claims involving EAS positions, Mr. Hill's counsel repeatedly failed to provide the EEO Office with the information it required and requested to conduct an investigation. Courts have held that "notwithstanding the passage of 180 days, [as is the case here,] plaintiffs who resort to the administrative process but do not cooperate in the proceedings can thereby fail to exhaust their administrative remedies." *Munoz v. Aldridge,* 894 F.2d 1489, 1493 (5th Cir.1990); *Pack,* 986 F.2d at 1156–58; *Charles v. Garrett,* 12 F.3d 870, 874–75 (9th Cir.1993); *Ed-*

*wards v. Department of the Army,* 708 F.2d 1344, 1346–47 (8th Cir.1983); *Foster v. Bentsen,* 919 F.Supp. 293, 298 (N.D.Ill.1996).

Mr. Hill's May 1993 EEO complaint referred to the 18 PCES managerial positions, leading the EEO Office to conclude that Mr. Hill was complaining about not having been selected for these positions. The EEO Office offered Mr. Hill an opportunity to correct this perception, but the plaintiff ignored the opportunity. Having decided to explore another remedial avenue, the MSPB appeal, Mr. Hill, through his counsel, told the EEO Office to cease its investigation.[12] Mr. Hill instructed the EEO Office to resume processing his complaint after losing before the MSPB. The EEO Office again sought clarification as to whether the complaint entailed anything other than nonselection for the 18 PCES managerial positions. Mr. Hill did not clarify.

■ In February and March 1996, the plaintiff finally began to cooperate with the EEO Office by indicating that his complaint encompassed nonselection for the EAS positions. Had the EEO Office not acted for the next six months, Mr. Hill may have been justified in filing suit in federal court. *Munoz,* 894 F.2d at 1493–94 (where "case languishes in the administrative phase for long beyond 180 days" and "record discloses no evidence that the plaintiffs have failed to cooperate or otherwise attempted to frustrate the administrative process," abandoning administrative process does not "constitute[ ] ... lack of cooperation" and does not result in failure to exhaust administrative remedies). Here, by contrast, Mr. Hill participated in the administrative process, at most, for two months with respect to the EAS positions, became impatient, and rushed to the court house. He effectively abandoned administrative remedies in midstream and therefore did not exhaust them.[13] *Khader v. Aspin,* 1 F.3d 968, 971 (10th Cir.1993).

**12.** Courts have held that abandoning the EEO process "to pursue another avenue of relief constitute[s] a failure to exhaust" administrative remedies. *Vinieratos v. U.S., Department of Air Force,* 939 F.2d 762, 769–70 (9th Cir.1991).

**13.** Defendant did not claim that Mr. Hill failed to exhaust his administrative remedies with respect

to the 18 PCES positions. In view of the fact that more than 180 days had passed since Mr. Hill filed his original complaint complaining about the PCES positions, and since they clearly were at issue, I conclude that this Court has subject matter jurisdiction over those claims.

Mr. Hill also argues that a federal court is empowered to address issues outside the administrative complaint if they are alike "or reasonably related to the allegations of the charge and growing out of such allegations." *Cheek v. Western & So. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir.1994) (quotation omitted). This argument does not help Mr. Hill for two reasons. The doctrine exists to aid lay persons undertaking the administrative process without the assistance of attorneys. *Id.* Mr. Hill's counsel prepared the May 1993 EEO complaint. More importantly, the rationale for the doctrine is that although an agency investigation pursuant to a complaint may be limited given the allegations, if the allegations are such that the investigation could reasonably be expected to encompass additional matters, these matters are properly before the court. *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir.1989). Here, the hypothetical inquiry is unnecessary. The record shows that the EEO Office could not engage in an investigation of Mr. Hill's claims regarding the EAS positions due to his failure to cooperate.

In summary, I lack subject matter jurisdiction over the Title VII claims pertaining to the EAS positions because Mr. Hill failed to exhaust administrative remedies. The defendant's motion to dismiss is granted accordingly.

As to the remaining ADEA claims implicating the EAS positions, on this summary judgment motion the record is devoid of any supported allegations concerning age, let alone allegations from which a reasonable factfinder could conclude that the Post Office would have selected Mr. Hill for an EAS position if not "for the [defendant's] motive to discriminate against [the plaintiff] because of his age." *Denisi v. Dominick's Finer Foods, Inc.*, 99 F.3d 860, 864 (7th Cir.1996); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); Fed.R.Civ.P. 56(c). The defendant's motion for summary judgment is therefore granted.

### Conclusion

For the reasons stated above, summary judgment on Mr. Hill's claim that he was not selected for one of the PCES positions is entered in favor of the defendant because these claims are barred by the statute of limitations. Summary judgment is also entered against Mr. Hill on his ADEA claims involving the EAS positions for the reasons stated above. Mr. Hill's remaining claims involving EAS positions are dismissed without prejudice since he has failed to exhaust his administrative remedies.[14]

14. Mr. Hill's motion for leave to file motion for summary judgment or for sanctions is denied.