**Robert E. HILL, Appellant,**

**v.**

**William J. HENDERSON, Postmaster General, United States Postal Service, Appellee.**

**No. 98–5443.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 5, 1999.

Decided Nov. 12, 1999.

Waite P. Stuhl argued the cause for appellant. With him on the briefs was Ernest C. Hadley.

Eric M. Jaffe, Assistant U.S. Attorney, argued the cause for appellee. With him on the briefs were Wilma A. Lewis, U.S. Attorney, and Mark E. Nagle and R. Craig Lawrence, Assistant U.S. Attorneys.

Before: EDWARDS, Chief Judge, WALD and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

A district court order dismissing one of several claims or parties is not a "final decision" qualifying for immediate appeal under 28 U.S.C. § 1291—unless the district court expressly determines "that there is no just reason for delay" and enters judgment under Fed.R.Civ.P. 54(b). The logic of this deferral of review is that, on net, it economizes on judicial resources. In some cases, to be sure, the deferred review will generate a need for new and duplicative proceedings that immediate review would have avoided. But if review is deferred, it is less likely that the appellate court will face overlapping issues and circumstances on two occasions, and often the issues involved in the dismissal will be mooted by the outcome on the other counts (such as settlement or recovery by plaintiff of full compensation). Rule 54(b) provides an escape hatch, enabling the district court to make such a partial disposition a "final judgment." See, e.g., *Justice v. Pendleton Place Apartments*, 40 F.3d 139, 142 (6th Cir.1994) (noting that interrelated claims are generally not appropriate for 54(b) certification because remaining claims will force the same issues to be reheard and future proceedings may moot the issues certified for appeal).

Here a district court dismissed Count One of the plaintiff's four-count complaint and ordered the remainder of the case transferred to the district court for the Northern District of Illinois under 28 U.S.C. § 1404(a) (1994). It made no determination under Rule 54(b), yet plaintiff seeks review of the dismissal. The issue is whether, simply because of the transfer order, we nonetheless have a "final judgment" reviewable in this circuit. The alternative is that the potential for appellate review of the one-count dismissal goes along with the rest of the case, with review occurring in the Seventh Circuit when and if the ordinary prerequisites of appellate review should be satisfied. Given the strong policy against piecemeal appeals,

we find that there is no final decision and thus dismiss the appeal.

\*   \*   \*   \*   \*   \*

In 1992 and 1993, the United States Postal Service ("USPS") restructured its executive level workforce. Robert Hill was employed as "General Manager, Real Estate," in the Chicago office of the Illinois Facilities Service Center. His position was classified in the USPS's top executive tier: the Postal Career Executive Service ("PCES"). As part of the restructuring, he was removed from his job and placed on temporary detail. When the USPS filled its new positions, Hill was not selected for any of the new PCES jobs, nor was he offered a position in the tier below the PCES known as the Executive and Administrative Schedule ("EAS"). He filed a formal complaint of discrimination dated May 10, 1993, which was received by the USPS Equal Employment Opportunity ("EEO") Office on May 17, 1993. His complaint alleged that "[a]ll of the selectees for the various positions were younger than Mr. Hill, and many of the selectees were of a different race, color, and sex than Mr. Hill." *Hill v. Runyon,* 959 F.Supp. 488, 493 (N.D. Ill.1997).[1]

On November 18, 1993, 185 days after his complaint was received, the USPS EEO Office officially acknowledged receipt. On December 8, 1993 the EEO Office first requested Hill's assistance in clarifying the issues raised therein. In the next two years, Hill sought to have his complaint heard by the Merit Systems Protection Board and by an EEOC administrative judge, largely ignoring the USPS EEO Office's requests for additional information. On February 16, 1996, after both the MSPB and the EEOC found themselves without jurisdiction to hear Hill's claims, he returned to the USPS EEO Office and began to cooperate with its

investigation. On April 3, 1996, however, he abandoned administrative proceedings by filing a civil action against the USPS in the district court for the Northern District of Illinois, alleging discrimination on the basis of race and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16 (1994), and discrimination on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA") of 1976, 29 U.S.C. § 633a (1994). On May 11, 1996 the USPS EEO Office dismissed Hill's administrative complaint because of his decision to initiate a civil action. See 29 C.F.R. § 1614.107(c) (1999).

After discovery, the district court granted the USPS's motion for summary judgment on Hill's Title VII and ADEA claims related to the PCES positions. It also dismissed without prejudice his claims related to the EAS positions on the ground that he had not exhausted administrative remedies—based on his failure to cooperate with the USPS EEO Office. See *Hill,* 959 F.Supp. at 489–90. We note that the non-cooperation necessarily began only *after* that office acknowledged receipt of his EEO complaint; that in turn occurred more than 180 days after the filing of the EEO complaint. Thus the asserted non-cooperation occurred in a period when, under the applicable regulations, Hill was already free to file a lawsuit. See 29 C.F.R. § 1614.408(b) (allowing suit starting 180 days after filing of EEO complaint). Hill then moved to have his remaining claims dismissed without prejudice, so that he might return to the USPS EEO Office and cure his failure to exhaust; the district court granted the request.

On April 24, 1997 Hill asked the USPS EEO Office to reopen its proceedings, but on July 14, 1997 it declined to do so be-

---

1. In view of this wording, and the observation by the Northern District of Illinois that all of the 18 PCES slots were filled with white males like Hill, see *id.* at 492 n. 9, we are uncertain why that court, and evidently the

USPS EEO Office as well, did not perceive the initial complaint as alleging discrimination in the EAS selection process. See *id.* at 495.

cause it found that Hill could not cure his prior failure to exhaust.

Hill filed this action in the district court here on October 10, 1997, alleging race, sex, and age discrimination related to the EAS selection process and retaliation for his pursuit of EEO claims. The district court dismissed Hill's EAS claim because it found that his failure to exhaust his administrative remedies was not subject to cure. For the finding of inadequate exhaustion the court evidently relied on the decision of the Northern District of Illinois, presumably on the view that issue preclusion made it conclusive against Hill. Hill filed a timely notice of appeal. The district court also issued an order to show cause why the action should not be transferred to the Northern District of Illinois, and later ordered the transfer. Hill has not sought review of that order.

\*   \*   \*   \*   \*   \*

■ We start with our own precedent. In *Reuber v. United States*, 773 F.2d 1367 (D.C.Cir.1985), the district court dismissed the entire case against one of several defendants and transferred the rest of the case to another district (in our case necessarily out-of-circuit). Despite the absence of a Rule 54(b) order, we found that the dismissal of the party was a final judgment reviewable here. We saw the issue only as one of timing, assuming that if we treated the dismissal order as non-final it would mature into finality, in this circuit, when the transferee court disposed of the rest of the case. We said rhetorically that surely Rule 54(b) could not require the plaintiff to await the end of proceedings in the transferee court "before pursuing *in our circuit* the question of whether [the dismissed defendant] may be sued here." *Id.* at 1368 (emphasis added). On that assumption, the probability of two appeals on overlapping facts and issues was about equally great whichever choice the court made; the only consequence of refusing to treat the dismissal as a final judgment would have been to delay the appeal in our circuit. The court did not mention the possi-

bility that appeal of the dismissal would flow to the transferee circuit; that, as Judge Hand put it, "[t]he review of any order of the district court in a transferred cause, made before transfer, is within the jurisdiction of the court of appeals of the circuit to which the cause has been transferred." *Magnetic Eng'g & Mfg. Co. v. Dings Mfg. Co.*, 178 F.2d 866, 870 (2d Cir.1950). Under that view, of course, it is possible to fully accomplish the purposes of the final judgment rule.

■ *Reuber* is still good law in this circuit; gaps in a decision's reasoning do not destroy its precedential value. But at the same time, when we are asked to extend *Reuber* from dismissal of a party to dismissal of a claim, its reasoning does not bar us from considering the real-world alternatives. Thus we do consider the prospect of review in the transferee circuit (if the issue is not mooted or abandoned).

■ We think that dismissals of claims and parties are properly distinguished for these purposes. The efficiencies sought to be achieved by the final judgment rule seem more likely to be accomplished if a *claim* dismissal tags along with the transfer than if a *party* dismissal does. With claims as opposed to parties there are greater probabilities that circumstances will moot dismissal of the appeal (e.g., by overall settlement, or by a recovery on one of the claims that effectively compensates plaintiff for loss under the dismissed claim), and that issues between the two (hypothetical) appeals will overlap.

In fact, there seems no great reason to suppose that insistence on the ordinary final judgment rule is unsuitable in the context of claim transfer. Temporarily withholding review of a dismissal of fewer than all the claims may eliminate any need for appellate review (as where the recovery satisfies the plaintiff), and may confine a package of related issues to one court, one time. It is presumably this practical consideration that has led most courts that have considered the question to follow the

path marked by Judge Hand. See, e.g., *EEOC v. Northwest Airlines, Inc.,* 188 F.3d 695, 700 (6th Cir.1999) (reviewing pre-transfer order of an out-of-circuit district court granting summary judgment on one claim and dismissing other claims); *Chaiken v. VV Publishing Corp.,* 119 F.3d 1018, 1025 n. 2 (2d Cir.1997) (same for dismissal of two defendants for lack of personal jurisdiction); *Mackensworth v. S.S. Am. Merchant,* 28 F.3d 246, 249–52 (2d Cir.1994) (same for rejection of motion to amend pleadings and a motion to compel the defendant to abandon its defense against plaintiff's claims); *Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1138 (5th Cir.1992) (same for dismissal of plaintiff's RICO claims); cf. *Chapple v. Levinsky,* 961 F.2d 372, 374 (2d Cir.1992) (noting that dismissal of certain defendants prior to transfer order could be appealed to the circuit into which the case had been transferred); *Carteret Sav. Bank, FA v. Shushan,* 919 F.2d 225, 228 (3d Cir.1990) (noting that a transfer order based on a finding by the transferor court that it lacked personal jurisdiction could be appealed at the conclusion of the case in the transferee circuit).

Against these cases stands the analysis of the Tenth Circuit in *McGeorge v. Continental Airlines, Inc.,* 871 F.2d 952 (10th Cir.1989). A district court here had dismissed some of plaintiff's claims and then transferred the case to the Western District of Oklahoma, which dismissed the remainder. The circuit court held that it had no jurisdiction over appeals from the dismissals in the District of Columbia district court because of 28 U.S.C. § 1294 (1994), which states that

> appeals from reviewable decisions of the district ... courts shall be taken to the courts of appeals as follows:
>
> (1) From a district court of the United States to the court of appeals for the circuit embracing the district....

28 U.S.C. § 1294(1). The court saw this as "leav[ing] no room for doubt that we do not have jurisdiction over the D.C. appeal." 871 F.2d at 954. It contrasted the "reviewable decisions" language of § 1294 with that of § 1291(a), affording review of all "final decisions." Since the decisions of the District of Columbia district court were the sort of decisions normally subject to eventual review (and thus, the court assumed, "reviewable decisions"), and had plainly been issued by a district court outside the Tenth Circuit, the court saw § 1294 as flatly barring its review. It recognized that its decision would create a "jurisdictional hiatus," *id.,* for it assumed that the orphaned claim dismissals would not qualify for review in the D.C. Circuit because of the final judgment requirement, *id.*

We think Congress's distinction between "final decisions" in § 1291 and "reviewable decisions" in § 1294 is consistent with our view that the appealability of the claim dismissal here flows to the transferee circuit. The Tenth Circuit seemingly understood "reviewable decisions" to encompass every *ruling* of a district court that might in due course ultimately pass under the scrutiny of an appellate court. But the term is susceptible to a narrower reading: decisions subject to review at the time they are entered, namely, (a) final decisions, (b) non-final decisions embraced by § 1292's provision for review of certain types of interlocutory orders, (c) decisions treated as final under the "collateral order" doctrine of *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and (d) (perhaps) non-final decisions subject to immediate mandamus.

The *McGeorge* court pointed out that the district court here could have cured the "jurisdictional hiatus" by entering an order under Rule 54(b). 871 F.2d at 954. True enough, and if we agreed with the court's reading of § 1294 we might be especially inclined to agree with a district court's Rule 54(b) certification that the circumstances presented a case where there was "no just reason for delay": de-

lay would, under the Tenth Circuit's assumptions, mean complete exemption from appellate review, and for no good reason. But that undesirable consequence, of course, turns on the Tenth Circuit's view of § 1294, which we do not share. Moreover, we note that under the *McGeorge* court's view, any non-final ruling that is *not* eligible for Rule 54(b) treatment, and is not under one of the exceptions for review of non-final decisions—e.g., a devastating discovery order—would completely elude review.

In support of its reading of § 1294 the *McGeorge* court cited cases in which various circuit courts of appeals had found themselves without jurisdiction over district courts outside of their circuit. 871 F.2d at 954. We find them all, as well as the additional cases we have been able to discover, distinguishable. Most do not really involve inter-circuit transfer at all. *C.P.C. Partnership v. Nosco Plastics, Inc.*, 719 F.2d 400, 401 (Fed.Cir.1983), involved the Federal Circuit, which § 1294 explicitly excepts from its coverage; the court ruled that it had no mandamus jurisdiction over a motion to disqualify counsel because its jurisdictional grant did not provide general supervisory authority over any district court. In *General Electric Co. v. Byrne*, 611 F.2d 670, 672 (7th Cir.1979), the court found itself without mandamus jurisdiction over matters in a case that was *slated* for transfer into the circuit, but had not been physically transferred. Two cases arising out of the same multidistrict litigation, *In re Corrugated Container Anti–Trust Litigation*, 620 F.2d 1086, 1090–91 (5th Cir. 1980), and *In re Corrugated Container Antitrust Litigation*, 662 F.2d 875, 880–81 & nn.10–11 (D.C.Cir.1981), turn on a special grant of power by 28 U.S.C. § 1407(b), enabling the transferee district court to "exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions." Both hold that appeal from a contempt order of a judge wielding that power goes to the circuit where the deposition is being held. We regarded the locus of appeal as controlled by § 1407(b)'s having effectively transformed the out-of-circuit judge into an in-circuit one. We noted the trade-off between the interests of securing uniformity of outcomes in the multidistrict litigation and uniformity in decisions on depositions in the circuits where they are held. *Id.* at 881 n. 11. Finally, *MacNeil Bros. v. Cohen*, 264 F.2d 186, 187 (1st Cir.1959), simply rejects a motion to transfer an appeal to another circuit, noting that there is no equivalent of 28 U.S.C. § 1404(a) for transfers from one court of appeals to another and expressing doubt that the proposed transferee circuit could review decisions of an out-of-circuit district court. Obviously *MacNeil Bros.*—like the other cases discussed above—in no way involves the issue of how the appeals forum may shift after a proper § 1404(a) transfer.

■ The remaining cases that deny reviewability of pre-transfer orders in the transferee circuit are ones considering the transfer orders themselves. See, e.g., *Roofing & Sheet Metal Serv. v. La Quinta Motor Inns*, 689 F.2d 982, 986–87 (11th Cir.1982); *Linnell v. Sloan*, 636 F.2d 65, 67 (4th Cir.1980). Transfer orders under § 1404 are not final appealable orders, nor, generally speaking, reviewable collateral orders. *Ukiah Adventist Hospital v. FTC*, 981 F.2d 543, 546 (D.C.Cir.1992). Commonly, however, courts of appeal in the circuit of origin entertain mandamus petitions to review such orders, certainly for legal infirmity, and in some circuits, for abuse of discretion. See *In re Scott*, 709 F.2d 717, 719 (D.C.Cir.1983); 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3855 (1986 & Supp.1999) (collecting cases from every circuit).

Once a case is transferred most circuits have found that they lack jurisdiction to review a transfer order from a court outside of their circuit upon final judgment. See *In re Briscoe*, 976 F.2d 1425, 1426 (D.C.Cir.1992) (noting that absent exceptional circumstances a transfer order

should not be reviewed by transferee circuit and "therefore may effectively become immune from appellate scrutiny"); *TEC Floor Corp. v. Wal–Mart Stores, Inc.*, 4 F.3d 599, 602 (8th Cir.1993) (finding that the court lacked jurisdiction to review the transfer order of a court outside of its circuit); *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1136 (6th Cir.1991) (same); *Reyes v. Supervisor of the DEA*, 834 F.2d 1093, 1095 (1st Cir.1987) (same); *Roofing & Sheet Metal Serv.*, 689 F.2d at 986–87 (same); *Linnell*, 636 F.2d at 67 (same); *Purex Corp. v. St. Louis Nat'l Stockyards Co.*, 374 F.2d 998, 1000 (7th Cir.1967) (same). But a few have asserted at least some degree of reviewability in the transferee circuit. Thus *Nascone v. Spudnuts, Inc.*, 735 F.2d 763, 773 n. 9 (3d Cir.1984), said that on final judgment a transferee court could determine whether venue did lie in the transferee court, citing *Hoffman v. Blaski*, 363 U.S. 335, 340 n. 9, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960), discussed below. See also *American Fidelity Fire Ins. Co. v. United States Dist. Ct.*, 538 F.2d 1371, 1377 n. 4 (9th Cir.1976) (refusing to grant mandamus because a transfer order is reviewable after final judgment even if transferor court was not within its circuit); *Magnetic*, 178 F.2d at 868–70 (same).

A possible explanation for finding transfer orders nonreviewable in the transferee circuit is that such orders are usually effectively subject to immediate review via mandamus in the circuit of the transferring court. They may thus immediately become "reviewable decisions" under § 1294. In any event, a party transferred against its will *can* indirectly secure at least partial review of the transfer in the transferee circuit by filing a motion for retransfer, the denial of which is clearly reviewable by the court of appeals of the transferee district. See, e.g., *Nascone*, 735 F.2d at 765–66; *Linnell*, 636 F.2d at 67;

*Purex Corp.*, 374 F.2d at 1000. Although at the time of a motion to retransfer the transfer order would be law of the case binding the second district court (in the absence of clear error or manifest injustice, see *Chrysler Credit Corp. v. Country Chrysler*, 928 F.2d 1509, 1518 (10th Cir. 1991)), the court of appeals in the transferee circuit would not be bound by the decision of either lower court. Indeed, in *Hoffman v. Blaski*, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960), the Supreme Court affirmed a transferee circuit's grant of mandamus to correct the transferee district court's denial of such a motion, saying that the "question of that court's jurisdiction still remained subject to attack as of right on appeal to the [transferee circuit court] from any final judgment in the action." *Id.* at 341 n. 9, 80 S.Ct. 1084; see also *Nascone*, 735 F.2d at 772 n. 7 (noting that when the Supreme Court said "jurisdiction" it plainly referred to inadequacies of venue rather than of subject matter jurisdiction).[2] In short, transfer orders themselves have engendered a complex and somewhat conflicting pattern of reviewability that does not appear to contradict our—and the other circuits'—view that reviewability of pre-transfer orders shifts to the transferee circuit.

Transfers by the Judicial Panel on Multidistrict Litigation under § 1407 have received special treatment that is also consistent with our view of § 1294. The practice has favored certification by the transferee court of potentially outcome determinative rulings for immediate, consolidated appeal under 28 U.S.C. § 1292(b) or Fed.R.Civ.P. 54(b), before the cases are returned to their courts of origin. See *In re Korean Air Lines Disaster of September 1, 1983*, 829 F.2d 1171, 1180 (D.C.Cir.1987) (en banc) (Ginsburg, J., concurring); *FMC Corp. v. Glouster Eng'g Co.*, 830 F.2d 770, 771–72 (7th Cir.1987); see also *In re Food Lion, Inc.*, 73 F.3d 528, 533 (4th Cir.1996)

---

**2.** If the party transferred against its will to a new court failed to move for retransfer, the omission might waive any claim on the subject. See *Texas Mun. Power Agency v. EPA*, 89 F.3d 858, 867 (D.C.Cir.1996) (per curiam).

(discussing the use of Rule 54(b)). An appeal before re-transfer enhances the likelihood of achieving the coordination benefits sought by § 1407 (the "just and efficient conduct" of multidistrict actions), as the circuit of the § 1407 transferee court can give the issues a unified treatment, and its interlocutory decision is likely to be accepted as binding law of the case once the cases are transferred back to their courts of origin. See *In re Korean Air Lines*, 829 F.2d at 1180. In appeals such as Hill's, by contrast, the appeal's being towed along to the transferee circuit normally carries the greatest probability of conserving judicial resources.

In *FMC Corp.*, the Seventh Circuit ruled that an appeal certified under § 1292(b) in a § 1407 case by the district court of consolidation must proceed in the circuit court for that district, rather than the court of appeals that would have jurisdiction on re-transfer. See 830 F.2d at 772. This corresponds with our reading of § 1294, for on certification the appealed decision becomes a "reviewable decision" that § 1294 requires to be reviewed in the circuit for the issuing district court. Of course if there is no § 1292(b) certification, or if it is rejected by the court of appeals, the issue would potentially return to the court of appeals for the district court where the action began, as one of the cases cited in *FMC Corp.* held. See *Allegheny Airlines, Inc. v. LeMay*, 448 F.2d 1341, 1344–45 (7th Cir.1971) ("The transferor court when the case is returned to it is, in our opinion, in the position of a third court on a second change of venue and takes the case with all of its errors, if any, that may have fastened on the carcase theretofore.").

Although it is our considered view that appellate jurisdiction will arise on the issuance of a final judgment by the Northern District of Illinois, we recognize that the Seventh Circuit might regard the Tenth Circuit view as more convincing. Would that leave Hill bereft of appellate review on Count One? We think not, because whatever the Seventh Circuit's analysis, a decision of a court of coordinate status is entitled to be considered "law of the case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (stating that courts should be loathe to disturb the decision of a coordinate court unless the initial decision was "clearly erroneous and would work a manifest injustice").

Finally, it emerged at oral argument that in the case's first appearance in the Northern District of Illinois the government moved for dismissal on the ground that proper venue for the now dismissed claim did not lie in that court (whereas it did in the District of Columbia). The district court there never ruled on the motion, and of course in the district court here there was no occasion for the government to make such a motion. If venue provisions in fact bar adjudication of Count One in the district court in Illinois, the prospect of achieving the full economies of the final judgment rule might begin to wane; for reversal of the dismissal would open up the prospect of separate litigations here and in Illinois. Of course there would have been, through that point, only one *appeal*. But if the destiny of this case entails litigation in two circuits, separation under Rule 54(b) might make sense. In fact, because the district court has not yet sent the files to the Northern District of Illinois, it could hereafter enter a Rule 54(b) order. Alternatively, of course, either the government might waive any venue defense to Count One in the Northern District of Illinois, or the district court might revoke its as yet unconsummated transfer order. On the present record, however, the appeal must be

*Dismissed.*