United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 No. 01-1242 September Term, 2002 

 Filed On: October 29, 2002

International Union of Painters and Allied Trades, 
 Local Unions No. 970 and 1144, AFL-CIO-CLC, 
 Petitioners

 v.

 National Labor Relations Board, 
 Respondent

 Consolidated with 
 01-1323

 ---------

 Before: Tatel and Garland, Circuit Judges and Williams, 
Senior Circuit Judge

 O R D E R

 It is ORDERED by the Court that the opinion of October 
25, 2002 be amended as follows:

 Pages 2 and 3, starting at line 17 of the text, delete the two 
sentences that begin "On petitions for review" and ends with 
"successorship clause." and replace with

 "The union petitioned for review, challenging the Board's 
edit of the successorship clause, and the Board filed an 
application for enforcement. The employer then filed an 
answer under Rule 15(b)(2) of the Federal Rules of Appellate 
Procedure, defending its refusal to bargain. Rejecting the 
employer's claims and accepting those of the union, we grant 
the Board's application for enforcement except with regard 

to the order's deletion of language from the successorship 
clause."

 FOR THE COURT:

 Mark J. Langer, Clerk

 BY:

 Michael C. McGrail

 Deputy Clerk

 
 

 United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 6, 2002 Decided October 25, 2002 

 No. 01-1242

International Union of Painters and Allied Trades, 
 Local Unions No. 970 and 1144, AFL-CIO-CLC, 
 Petitioners

 v.

 National Labor Relations Board, 
 Respondent

 Consolidated with 
 01-1323

 On Petition for Review and Application for 
 Enforcement of an Order of the 
 National Labor Relations Board

 Forrest H. Roles argued the cause and filed the briefs for 
W.R. Mollohan, Inc.

 Joseph E. Kolick, Jr. argued the cause for International 
Union of Painters and Allied Trades, Local Unions No. 970 
and 1144, AFL-CIO-CLC. With him on the brief was Kir-
sten Lea Doolittle.

 David A. Fleischer, Senior Attorney, National Labor Rela-
tions Board, argued the cause for the Board. With him on 
the brief were Arthur F. Rosenfeld, General Counsel, John 
H. Ferguson, Associate General Counsel, Aileen A. Arm-
strong, Deputy Associate General Counsel, and Fred L. Corn-
nell, Jr., Supervisory Attorney. Frederick Havard, Superviso-
ry Attorney, and Jill A. Griffin, Attorney, National Labor 
Relations Board, entered appearances.

 Before: Tatel and Garland, Circuit Judges, and
Williams, 
Senior Circuit Judge.

 Opinion for the Court filed by Senior Circuit Judge 
Williams.

 Williams, Senior Circuit Judge: This case arises from the 
refusal of an employer to enter into and abide by a collective 
bargaining agreement ("CBA") negotiated with various un-
ions (collectively, the "union"). The employer claimed that it 
had not authorized the negotiators and therefore was not 
bound by the agreement; it also argued that the union's 
failure to have obtained majority status excused the employ-
er's non-compliance. The National Labor Relations Board 
rejected these arguments. See W.R. Mollohan, Inc., 333 
NLRB No. 162, 2001 WL 497324, at *1, *3 (2001). The 
employer also claimed that two clauses of the agreement 
violated the National Labor Relations Act. The Board reject-
ed one such claim and accepted the other, relating to the 
"successorship clause." Id. at *2. But it ruled that the 
allegedly defective language in that clause was severable and 
therefore did not justify the employer's refusal to abide by 
the agreement. Id. at *3. The union petitioned for review, challenging
the Board's edit of the successorship clause, and the Board filed
an application for enforcement. The employer then filed an an-
swer under Rule 15(b)(2) of the Federal Rules of Appellate 
Procedure, defending its refusal to bargain. Rejecting the employer's
claims and accepting those of the union, we grant the Board's 

application for enforcement except with regard to the order's 
deletion of language from the successorship clause.
 Because there is little overlap between the issues relating 
to the negotiations and majority status on the one hand, and 
to the two disputed clauses on the other, we address them 
separately.

 Our review is governed by s 10(e) of the Act, 29 U.S.C. 
s 160(e), and the Administrative Procedure Act. The Board's 
factual findings "shall be conclusive" if supported by substan-
tial evidence. 29 U.S.C. s 160(e). Its reasonable interpreta-
tions of the Act are entitled to deference under Chevron 
U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 
U.S. 837, 842-45 (1984). Board interpretations of the CBA, 
however, receive no deference. Litton Fin'l Printing Div. v. 
NLRB, 501 U.S. 190, 202-03 (1991).

 * * *

 W.R. Mollohan, Inc. is in the business of painting and 
repainting bridges, overpasses, and tunnels on federal and 
state highways. For many years, Mollohan signed union 
contracts negotiated by the Charleston Chapter of the Paint-
ing and Decorating Contractors of America ("the Associa-
tion"), which represented several area employers in collective 
bargaining negotiations with the union. Mollohan's Vice 
President of Operations, Joe Beam, was president of the 
Association and served on its negotiating committee. The 
Association negotiated the contract preceding the one now in 
dispute, which Beam then signed on behalf of the company.

 In March 1998 the union expressed its desire to negotiate a 
new contract by sending a letter to the Association. Beam, in 
his capacity as president of the Association, sent a similar 
letter to the union expressing the Association's desire to 
negotiate as well. At the first bargaining session, Beam and 
Association Secretary-Treasurer Ken Bowen told the union 
that they were representing seven named employers, includ-
ing Mollohan. Negotiations began.

 Beam resigned from the negotiating committee in the 
course of the negotiations, but didn't indicate that Mollohan 
was withdrawing authority from the Association to bargain on 
its behalf. About 10 days later, on April 28, 1998, the union 
and the Association reached agreement on a new CBA, 
subject to ratification by the union's membership, which 
followed in due course.

 On May 8 Mollohan notified the Association and the union 
that it was withdrawing authorization from the Association to 
bargain on its behalf. The union took the position that the 
company was already bound, and asked Mollohan to sign. 
Mollohan refused and, without bargaining with the union, 
ceased making contractually required payments to several 
funds, and instead began depositing employee pension funds 
into an escrow account.

 Acting on separate charges filed by the union, the Board's 
General Counsel issued a consolidated complaint alleging that 
Mollohan had violated ss 8(a)(1), (5) of the Act, 29 U.S.C. 
s 158(a)(1), (5), by these and related acts of non-compliance 
with the agreement. Besides its claim that the negotiators 
lacked authority, Mollohan argued that the agreement was 
invalid because two of its clauses violated the Act, thus 
excusing Mollohan's non-compliance.

 After a hearing, the Administrative Law Judge issued a 
decision entirely rejecting Mollohan's claims. It didn't have 
to consider severability, as it found the two challenged clauses 
not violative of the Act.

 The Board affirmed the ALJ's findings of violations, hold-
ing that the Association had apparent authority to bind the 
company. Mollohan, 333 NLRB No. 162, 2001 WL 497324, at 
*1. Contrary to the ALJ, however, the Board found that 
some language in the successorship clause violated s 8(e) of 
the Act, and accordingly it modified the ALJ's recommended 
order to require that Mollohan execute and abide by the 
contract only after deletion of the unlawful language. Id. at 
*2-*3.

 First, we reject Mollohan's argument that the Board's 
finding of apparent authority was not supported by substan-
tial evidence. As both the ALJ and the Board discussed at 
length in their opinions, the Association told the union, in the 
presence of company representatives, that it represented the 
company, and the company did not purport to revoke that 
authority until after the agreement was reached. Id. at *1. 
Thus the Board's conclusion that the Association had appar-
ent authority to bind Mollohan is supported by substantial 
evidence.

 Although the company argues that the Board erred in 
deciding the case on an issue, apparent authority, that it says 
was not litigated before the ALJ, Employer's Br. at 13, 
Mollohan failed to raise the argument before the Board. 
Thus we lack jurisdiction. 29 U.S.C. s 160(e) ("No objection 
that has not been urged before the Board ... shall be 
considered by the court, unless the failure or neglect to urge 
such objection shall be excused because of extraordinary 
circumstances."). Mollohan's attempted parry--that it could 
not raise the claim because it didn't know that the Board 
would adopt that theory until it issued its decision--doesn't 
work. Mollohan could have raised the point in a petition for 
reconsideration. International Ladies' Garment Workers' 
Union v. Quality Mfg. Co., 420 U.S. 276, 281 n.3 (1975).

 Second, although Mollohan appears to accept the general 
validity of the Board's rule that the company could not 
repudiate the agreement simply because the union had not 
attained majority status, John Deklewa & Sons, 282 NLRB 
1375, 1385 (1987) ("Deklewa"), enforced sub nom. Interna-
tional Ass'n of Bridge, Structural & Ornamental Iron Work-
ers v. NLRB, 843 F.2d 770, 775-780 (3d Cir. 1988), it argues 
that the Board erred in not creating an exception to that rule.

 Section 8(f) of the Act permits a construction industry 
employer and a union to enter into a contract even though 
"the majority status of such [union] has not been established 
... prior to the making of such agreement." 29 U.S.C. 
s 158(f). The parties here pursued that course. The Board 
applied the interpretation of s 8(f) that it adopted in Dekle-

wa, under which an employer may not unilaterally repudiate a 
pre-hire agreement unless the employees have voted to decer-
tify the union or change their bargaining representative. See 
Mollohan, 333 NLRB No. 162, 2001 WL 497324, at *3.

 In Deklewa the Board changed course from an earlier 
interpretation that had allowed repudiation of s 8(f) agree-
ments at any time before the union gained majority status. 
The Deklewa Board found that the prior interpretation was 
not supported by the text or legislative history of the Act, and 
had caused disruption and instability because "neither the 
parties to the agreement nor the employees working under it 
can know with any degree of certainty what their respective 
rights and obligations are at any given time." Deklewa, 282 
NLRB at 1383. In fact, the Board found that the right to 
repudiate a s 8(f) agreement was "so antithetical to tradition-
al principles of collective-bargaining under the Act" that it 
was "likely that Congress would have expressly stated such a 
right if it intended to create one." Id. at 1381. So it held 
that both parties to a s 8(f) agreement are required by 
ss 8(a)(5) and 8(b)(3) "to comply with that agreement unless 
the employees vote, in a Board-conducted election, to reject 
(decertify) or change their bargaining representative." Id. at 
1385. The Third Circuit enforced the Deklewa ruling, finding 
it to be a reasonable and permissible construction of the Act. 
843 F.2d at 775-80.

 Mollohan does not here argue that the Board's Deklewa 
rule is an unreasonable interpretation of the Act. In fact, the 
company expressly "acknowledges the soundness of the 
Board's ... argument that the Board has authority to adopt 
reasonable interpretations of the Act, to which this Court 
must give deference, even when the Board has changed its 
mind in an effort to better effectuate those policies." Emp. 
Reply Br. at 4. Instead, Mollohan suggests that we should 
not approve the Board's reliance on Deklewa, in certain 
circumstances, i.e., "in a case like this one where its applica-
tion is critical." Emp. Br. at 19.

 In light of the company's limited argument, we have no 
need to rule upon the reasonableness of the Deklewa inter-

pretation as a whole. The narrower claim for an exception 
builds on the proposition that application of a generally valid 
rule may prove invalid in a case presenting special circum-
stances. See, e.g., WAIT Radio v. Federal Communications 
Comm'n, 418 F.2d 1153, 1157-58 (D.C. Cir. 1969). But here 
Mollohan has pointed to no specific facts that distinguish it 
from any other situation in which a party to a s 8(f) agree-
ment might wish to repudiate the agreement. So far as 
appears, its argument is simply that the "application is criti-
cal" in the sense that it is outcome-determinative; obviously 
an exception for that circumstance would obliterate the rule.

 The employer also argues that we should apply the Board's 
pre-Deklewa interpretation of the Act because "this case 
arose within the jurisdiction of the Fourth Circuit," Employ-
er's Brief at 20, which appears to be the only circuit to resist 
the Board's attempt to implement its Deklewa interpretation. 
See Industrial Turnaround Corp. v. NLRB, 115 F.3d 248 
(4th Cir. 1997). But the argument is to some degree inconsis-
tent with Mollohan's failure to claim that the Deklewa rule is 
invalid. To the extent that Mollohan asks us to create special 
circuit law depending on the geographic origins of a case, it 
asks us--with no precedential support, unsurprisingly--to 
abandon the federal circuits' normal task of trying to deter-
mine federal law as correctly as possible. See, e.g., In re 
Korean Air Lines Disaster of September 1, 1983, 829 F.2d 
1171, 1176 (D.C. Cir. 1987) ("The federal courts spread across 
the country owe respect to each other's efforts and should 
strive to avoid conflicts, but each has an obligation to engage 
independently in reasoned analysis. Binding precedent for 
all is set only by the Supreme Court...."); compare Hill v. 
Henderson, 195 F.3d 671, 678 (D.C. Cir. 1999) (discussing 
special situation where one circuit's "law of the case" is to be 
honored by another). Mollohan's other arguments against 
Deklewa, raised for the first time in its reply brief, are 
waived.

 * * *

 We now turn to the validity of specific clauses in the CBA. 
First is the preservation-of-work clause.

 In a very obliquely expressed argument, Mollohan contends 
that the preservation-of-work clause is invalid because, it 
says, "it applies ... to work of a type not performed by the 
Employer." Emp. Br. at 17. Mollohan offers no analysis, 
merely citing the dissent of Board member Hurtgen from the 
Board decision, Mollohan, 333 NLRB No. 162, 2001 WL 
497324, *2, n.11., a dissent that in turn simply cites his own 
dissent in Carpenter's District Council of New York City 
(Mfg. Woodworkers Ass'n.), 326 NLRB 321, 328-29 (1998) 
(Hurtgen dissent), which in turn points us to two other cases, 
see id. at 328 (Hurtgen dissent) ("The more particularized 
rationale for my position is to be found in the Manganaro 
dissent and in Alessio."). A litigant must do more than 
simply point to the beginning of a string of incorporations by 
reference and ask the court to discern which arguments he 
seeks to advance. This is particularly true where, as here, 
the incorporated arguments involve contract language that 
differs from case to case and in all instances from the text of 
the clause in this case. In order to prompt a ruling from this 
court, Mollohan needed to at least make a rudimentary 
argument explaining how the words of this contract conveyed 
an illegal meaning. As Mollohan has failed to do so, it would 
be irresponsible for us to interpret the language. Thus we 
cannot find that the preservation-of-work clause violates 
s 8(e).

 The remaining issue is posed by the successor clause. Its 
key parts are as follows:

 In the event the Employer's business is, in whole or in 
 part, sold, leased, transferred, or taken over by sale, 
 transfer, lease, assignment, receivership, or bankruptcy 
 proceedings, such business and operation shall continue 
 to be subject to the terms and conditions of this Agree-
 ment for the life thereof.
 
 It is understood by this provision that the parties 
 hereto shall not use any leasing or other transfer device 
 to a third party to evade this Agreement....
 
 In the event the Employer fails to require the pur-
 chase, transferee, or lessee to assume the obligations of 
 
 this Agreement, the Employer (including partners there-
 of) shall be liable to the Union, and to the employees 
 covered for all damages sustained as a result of such 
 failure to require assumption of the terms of this Agree-
 ment, but shall not be liable after the purchaser, or 
 lessee has agreed in writing to assume the obligations of 
 this Agreement.
 
J.A. at 245-46. Mollohan's complaint, which the Board ac-
cepted, is that the clause violates s 8(e) of the Act insofar as 
it covers leases. Section 8(e) provides in relevant part:

 It shall be an unfair labor practice for any labor organi-
 zation and any employer to enter into any contract or 
 agreement, express or implied, whereby such employer 
 ceases or refrains or agrees to cease or refrain from 
 handling, using, selling, transporting or otherwise deal-
 ing in any of the products of any other employer, or to 
 cease doing business with any other person, and any 
 contract or agreement entered into heretofore or hereaf-
 ter containing such an agreement shall be to such extent 
 unenforceable and void....
 
29 U.S.C. s 158(e). The section is designed to eliminate 
secondary boycotts, i.e., union attempts to pressure neutral 
employers to stop doing business with other businesses in-
volved in labor disputes. See National Woodwork Mfrs. 
Assoc. v. NLRB, 386 U.S. 612 (1967). Section 8(e) does not, 
however, reach "primary" provisions, i.e., those encompassing 
"employees' activity to pressure their employer to preserve 
for themselves work traditionally done by them." Id. at 635 
(emphasis added).

 The Board noted that it "has generally considered a lease 
to be a form of 'doing business' within the meaning of Section 
8(e)," and that because the clause applies "regardless of 
whether the unit employees are retained," it "exceeds the 
legitimate primary purpose of protecting unit work and is 
directed at the secondary purpose of furthering union objec-
tives elsewhere." Mollohan, 333 NLRB No. 162, 2001 WL 
497324, *2.

 But the clause in question is a successorship clause, explic-
itly said to take effect only when "the Employer's business is, 
in whole or in part" transferred to another entity. Moreover, 
as the ALJ correctly noted, the clause itself refers to efforts 
to use a lease transfer "to evade this Agreement." Id. We 
think it clear that the clause is designed to protect the 
employees' legitimate and primary interest in retaining the 
benefits of the CBA in the event of a transfer--as it says--of 
the "business." The Board's argument that the clause is 
secondary because it applies "regardless of whether unit 
employees are retained," Mollohan, 333 NLRB No. 162, 2001 
WL 497324, at *2, not only overlooks the clause's limited 
trigger (transfer in whole or in part of the employer's "busi-
ness"), but it proves too much, as the same reasoning would 
doom the sale language, which the Board finds acceptable. 
We therefore reverse the Board's finding that the leasing 
language of the successorship clause must be excised as 
unlawful.

 * * *

 Thus we reject all of the employer's claims but grant the 
union's petition with respect to the successorship clause, and 
we grant the Board's application for enforcement except with 
regard to that clause.

 So ordered.