# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Submitted September 18, 2017      Decided October 12, 2018

No. 16-7132

VASILLI KATOPOTHIS AND FRANCESCA DAHLGREN,
APPELLANTS

v.

WINDSOR-MOUNT JOY MUTUAL INSURANCE CO. AND R.W.
HOME SERVICES, INC., DOING BUSINESS AS GALE FORCE
CLEANING AND RESTORATION,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-00380)

———

On Rehearing

———

*Glenn H. Silver* was on the briefs for appellants. *Erik B. Lawson* entered an appearance.

*George D. Bogris* was on the brief for appellee R.W. Home Services, Inc., d/b/a Gale Force Cleaning and Restoration.

*Charles B. Peoples* was on the brief for appellee Windsor-Mount Joy Mutual Insurance Co.

Before: GRIFFITH and KATSAS,[*] *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, Circuit Judge: We issued our initial opinion in this case on July 31, 2018. Because of a concern with the disposition, we vacated that opinion and *sua sponte* ordered rehearing and supplemental briefing. We now substitute the following opinion in its place.

\*   \*   \*

Vasilli Katopothis and Francesca Dahlgren (the "Dahlgrens") own a beach home that flooded in a plumbing accident while they were away. They sued their insurance company for breach of contract when it refused to cover the damage. They also sued their cleaning-and-restoration company for failing to adequately remedy the damage and prevent mold. The district court granted summary judgment in favor of the insurance company based on the plain language of the Dahlgrens' insurance policy and transferred the claims against the cleaning-and-restoration company to the district court in Delaware for lack of personal jurisdiction. We lack jurisdiction to review the transfer order but affirm the grant of summary judgment.

---

[*]Judge Katsas was drawn to replace then Judge, now Justice, Kavanaugh, who was a member of the panel at the time the case was submitted but did not participate in this opinion. Judge Katsas has read the briefs and the supplemental briefs and reviewed the record.

3

I

A

In May 2000, the Dahlgrens, who reside in the District of Columbia, purchased a beach home in Rehoboth Beach, Delaware, where they spend most of their weekends. At all times relevant to this litigation, the house was a second residence and remained fully furnished with the accessories of daily life, such as furniture, clothes, food, toiletries, and medicine. When not at their beach home, the Dahlgrens routinely left the heat on to prevent the pipes from freezing and asked a friend to check on the house and retrieve the mail. They did not, however, shut off the water supply.

In February 2013, Ms. Dahlgren returned to the beach home to find two inches of standing water throughout the main level and additional water "gushing" from the ceiling overhead. The Dahlgrens had been away for ten days, and, in their absence, a pressurized hot water pipe in the upstairs bathroom had separated at the joint and flooded the house.

The Dahlgrens notified their insurance company, Windsor-Mount Joy Mutual Insurance Co. ("Windsor-Mount"), about the flooding. They also contracted with R.W. Home Services, Inc., doing business as Gale Force Cleaning and Restoration ("Gale Force"), to remedy the damage and prevent mold. According to the Dahlgrens, Gale Force was negligent in its clean-up effort and mold spread through the house, so the Dahlgrens eventually decided to tear it down and build a new one.

The Dahlgrens timely filed an insurance claim with Windsor-Mount to cover the damage from the accident. The insurance company denied the claim because, while they were

away, the Dahlgrens had failed to shut off the water where it entered the house.

B

The Dahlgrens sued Windsor-Mount for breach of contract and alleged $800,000 in damages. They filed suit in the Superior Court of the District of Columbia, but Windsor-Mount, a Pennsylvania corporation with its principal place of business in Pennsylvania, invoked federal diversity jurisdiction and removed the case to the district court. *See* 28 U.S.C. §§ 1332(a), 1441(a). Windsor-Mount impleaded Gale Force as a third-party defendant on the theory that if Windsor-Mount was liable to the Dahlgrens, the extent of its liability turned on Gale Force's conduct. The Dahlgrens amended their complaint to add claims against Gale Force as well for breach of contract, negligence, negligent misrepresentation, and violations of the Delaware Consumer Fraud Act, 6 Del. Code §§ 2511-27. The Dahlgrens and Windsor-Mount then filed cross-motions for summary judgment, and Gale Force moved to be dismissed from the case for lack of personal jurisdiction.

The district court determined that the Dahlgrens could not recover under the clear terms of their insurance policy and granted summary judgment against them on that issue. *See Katopothis v. Windsor-Mount Joy Mut. Ins. Co.*, 211 F. Supp. 3d 1, 13-21 (D.D.C. 2016). While the Dahlgrens argued that Delaware law should apply and Windsor-Mount argued for District of Columbia law, the district court was not put to the choice because the insurance claim failed under the law of both jurisdictions. *See id.* at 13-14; *see also City of Harper Woods Emps.' Ret. Sys. v. Olver*, 589 F.3d 1292, 1298 (D.C. Cir. 2009) ("A federal court sitting in diversity applies the conflict of law rules of the forum in which it sits." (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941))); *USA Waste of Md.,*

*Inc. v. Love*, 954 A.2d 1027, 1032 (D.C. 2008) ("A conflict of laws does not exist when the laws of the different jurisdictions are identical or would produce the identical result on the facts presented.").

The district court also concluded that the Dahlgrens did not allege that Gale Force, a Delaware corporation with its principal place of business in Delaware, had sufficient contacts with the District of Columbia to establish personal jurisdiction. The district court accordingly did not resolve the Dahlgrens' claims against Gale Force, but instead transferred them to the district court in Delaware. *Katopothis*, 211 F. Supp. 3d at 21-27; *see* 28 U.S.C § 1406(a); *Sinclair v. Kleindienst*, 711 F.2d 291, 293-94 (D.C. Cir. 1983) (construing 28 U.S.C. § 1406(a) to authorize transfer of venue for lack of personal jurisdiction).

The district court issued its order on September 26, 2016. On October 7, 2016, the clerk transferred the case file to the district court in Delaware, where the Dahlgrens' claims against Gale Force have been stayed pending the outcome of this litigation. The Dahlgrens filed their notice of appeal to this court on October 11, 2016. The Dahlgrens argue that the district court below misconstrued their insurance policy under Delaware law and erroneously transferred the claims against Gale Force.

II

We begin, as every court must, by addressing the question of jurisdiction. Although it is clear that the district court had diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a), there are questions about ours.

6

A

The Dahlgrens argue that the district court erred in concluding that it lacked personal jurisdiction to adjudicate their claims against Gale Force and transferring them to the district court in Delaware. We lack jurisdiction to consider this argument because it was lodged with us after the Dahlgrens' claims had been transferred.

"The basic rule in civil practice is that if a case is physically transferred before an appeal or a petition for mandamus has been filed, the court of appeals in the transferor circuit has no jurisdiction to review the transfer." *In re Briscoe*, 976 F.2d 1425, 1426 (D.C. Cir. 1992) (per curiam). This rule is subject to a narrow exception "[w]hen there is a substantial issue whether the district court had 'power to order the transfer.'" *Id.* at 1427 (quoting *Starnes v. McGuire*, 512 F.2d 918, 924 n.6 (D.C. Cir. 1974) (en banc)). In *Briscoe*, the U.S. District Court for the Southern District of Florida transferred Briscoe's criminal cases to the U.S. District Court for the District of Columbia. *Id.* at 1426. The D.C. court retransferred "one of the cases back to" Florida and, after the file was sent to Florida, Briscoe appealed. *Id.* at 1426-27. We concluded that the retransfer order violated "the fundamental principle that the propriety of the transferor court's exercise of discretion under [Federal Rule of Criminal Procedure] 21(d) is not subject to review by the" transferee court. *Id.* at 1428. So even though Briscoe did not file his appeal until after the court had transferred his file, in light of this "substantial issue," we had jurisdiction to review the transfer order. *Id.* at 1426-29.

We have also, in limited circumstances, informally requested that the transferee court "return the file" and resolved the appeal "after the file came back." *Id.* at 1427. For instance, we requested the return of the case file in *Fine v. McGuire*

because the district court "sua sponte" transferred the case to another forum without providing "notice or hearing to the parties." 433 F.2d 499, 500 & n.1 (D.C. Cir. 1970) (per curiam).

The Dahlgrens' case is altogether different. They have not raised any "substantial issue" concerning the district court's power to order the transfer of their case, which took place four days before they filed a notice of appeal. Nor have they identified any reason why we should ask the Delaware court to return the file. In fact, the Dahlgrens' opening brief barely mentions the transfer issue, and then only in passing. *See* Dahlgrens Br. 34 (stating only that the district court's decision to transfer the claims against Gale Force was "inextricable" from its decision to grant summary judgment to Windsor-Mount and should be reversed). Nothing in the record suggests that we have jurisdiction to review their appeal of the transfer order.

B

We do have jurisdiction to review the Dahlgrens' appeal of the district court's grant of summary judgment to Windsor-Mount.

"The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ." 28 U.S.C. § 1291. In general, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties" is not "final" unless the district court certifies, pursuant to Federal Rule of Civil Procedure 54(b), that "there is no just reason for delay." Fed. R. Civ. P. 54(b).

The district court granted summary judgment to Windsor-Mount but did not render a final decision on the Dahlgrens' claims against Gale Force. Nor did the court certify, pursuant to Rule 54(b), that "there [was] no just reason for delay[ing]" a final judgment on the Dahlgrens' claims against Windsor-Mount.

Rule 54(b) would therefore seem to preclude our review of the Dahlgrens' appeal of the grant to summary judgment. And, indeed, where a court dismisses one claim and transfers the remaining claims to another forum, in the absence of a Rule 54(b) order, the non-transferred claims "tag[] along" with the transferred claim so that they may be resolved together on appeal. *Hill v. Henderson*, 195 F.3d 671, 674 (D.C. Cir. 1999). This serves Rule 54(b)'s concern for judicial economy because, in a case involving multiple claims against the same party, there is a greater likelihood of overlapping issues or that resolution of one claim might moot another. *Id.*

While Rule 54(b) applies to a transfer case that involves the "dismissal of a claim," it does not apply to a transfer case involving the "dismissal of a party." *Id.*; *see Reuber v. United States*, 773 F.2d 1367, 1368 (D.C. Cir. 1985) (per curiam). Where the district court dismisses all claims against one party and transfers the remaining claims against other parties to another forum, the court "disassociate[s] itself from [the] case in all respects." *Reuber*, 773 F.3d at 1368. We accordingly treat this type of party dismissal as "final," even if we lack jurisdiction to review the transfer order, and notwithstanding the absence of a Rule 54(b) order. *Id.*

So have the Dahlgrens asked us to review the "dismissal of a claim" or the "dismissal of a party"? The answer is surely the dismissal of a party. The district court granted summary judgment to Windsor-Mount, which also ended Windsor-

Mount's claims against Gale Force. *See Katopothis*, 211 F. Supp. 3d at 6 ("Windsor has filed a third party complaint against Gale Force. That complaint alleges that, to the extent Windsor is liable to Plaintiffs, it is subrogated to Plaintiffs' claims against Gale Force . . . ."). Because this amounts to a "party dismissal," we have jurisdiction to review this order on appeal pursuant to § 1291.

## III

We review de novo issues of contract interpretation and the grant of summary judgment. *Bode & Grenier, LLP v. Knight*, 808 F.3d 852, 857, 862 (D.C. Cir. 2015).

## A

The Dahlgrens' homeowners insurance policy is a twenty-seven page standard contract produced by the American Association of Insurance Services. It provides coverage for damage to both real and personal property resulting from accidental discharge or leakage from the plumbing, subject to specific exclusions. The cover page of the policy also lists a number of endorsements included with the standard contract to amend the terms of coverage. ML-508D is one of those endorsements. ML-508D was approved by the Delaware Insurance Commissioner and printed on a blue sheet of paper to stand out from the rest of the policy.

It reads in full:

### ADDITIONAL EXCLUSIONS FOR UNOCCUPIED RESIDENCES

In addition to exclusions found elsewhere in your policy, if the insured residence is vacant, unoccupied (meaning an

absence in excess of 72 hours), or under construction and unoccupied, the insured must:

> a. Maintain heat in the residence and shut off the water supply where it enters the residence. If the residence is heated by a hot water system, the water supply to the heating system must be maintained and the water supply to the rest of the residence must be shut off.
>
> OR
>
> b. Shut off the water supply where it enters the residence and completely empty liquids from any plumbing, heating, air conditioning system, water heater, or domestic appliance.

> If this is not done, we do not pay for loss caused by freezing of or discharge, leakage, or overflow from any plumbing, heating, or air conditioning system or any appliance or other equipment attached to it.

In other words, when the house remains unoccupied for more than 72 hours, the homeowner must either leave the heat on and shut off the water where it enters the house or shut off the water where it enters the house and drain any remaining liquid from the plumbing. Otherwise, ML-508D voids coverage for any damage caused by plumbing discharge, leakage, or overflow.

B

According to Delaware law, "[W]here the language in insurance contracts is unambiguous, the language is given its plain and ordinary meaning." *Bermel v. Liberty Mut. Fire Ins. Co.*, 56 A.3d 1062, 1070 (Del. 2012). An ambiguous insurance policy "is typically construed against the drafter and in accordance with the reasonable expectations of the insured."

*Id.*; *see also O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 288 (Del. 2001); *Penn. Mut. Life Ins. Co. v. Oglesby*, 695 A.2d 1146, 1149-50 (Del. 1997). But "a contract is only ambiguous when the provisions in controversy are reasonably or fairly susceptible to different interpretations" and "not . . . simply because the parties do not agree on the proper construction." *O'Brien*, 785 A.2d at 288. Therefore, "[W]here the language of a policy is clear and unequivocal, the parties are to be bound by its plain meaning." *Id.*

The Dahlgrens cannot recover under the clear and unambiguous terms of their insurance policy. If their house remained unoccupied "in excess of 72 hours," the Dahlgrens were required to "[m]aintain heat in the residence and shut off the water supply where it enters the residence," or else the plain language of ML-508D excludes coverage for "loss caused by . . . discharge, leakage, or overflow from any plumbing . . . system." There is no dispute the Dahlgrens were away from their beach home for ten days and failed to shut off the water supply where it entered the house. There is no question that the damage for which they now seek coverage was caused by flooding from the plumbing. It is a plain and simple matter that they cannot recover from Windsor-Mount for their loss.

Nevertheless, the Dahlgrens offer several arguments for why we should disregard the straightforward application of ML-508D and grant them relief. None are persuasive.

The Dahlgrens first argue that the policy extends coverage to real and personal property for damage that results from plumbing accidents. They contend that this coverage cannot be limited by a subsequent endorsement because doing so would create conflicting contract terms or render the policy ambiguous.

We disagree. By definition, endorsements amend the terms of an insurance policy. *See* Endorsement, *Black's Law Dictionary* (10th ed. 2014) ("An amendment to an insurance policy; a rider."). That's their very purpose. A policy is not ambiguous or contradictory just because an endorsement amends its provisions. *See Intel Corp. v. Am. Guarantee & Liab. Ins. Co.*, 51 A.3d 442, 447 & n.14 (Del. 2012); *see also Grinnell Mut. Reins. Co. v. Schwieger*, 685 F.3d 697, 701 (8th Cir. 2012) ("[W]here provisions in the body of the policy conflict with an endorsement or rider, the provision of the endorsement governs." (quotation marks omitted)). The Dahlgrens' argument neglects this basic proposition of how an insurance policy works.

The Dahlgrens also assert that the provisions in their policy extending coverage to real and personal property refer only to two sets of exclusions, neither of which include ML-508D. They reason that this means ML-508D does not apply to real or personal property coverage. At the very least, the Dahlgrens contend, it isn't clear that ML-508D applies.

This argument ignores that ML-508D is titled "*Additional* Exclusions for Unoccupied Residences" (emphasis added) and is listed on the cover page of the policy with other endorsements that amend the terms of the contract. It does not matter that other exclusions also apply to the Dahlgrens' house because ML-508D operates in addition to whatever other exclusions exist. By its terms, ML-508D expressly forecloses recovery for *all* loss associated with plumbing accidents, including damage to real and personal property, unless certain requirements are met.

Next, the Dahlgrens claim their beach home was "neither vacant nor unoccupied in any conventional sense" because it remained furnished with the accessories of daily life.

Dahlgrens Br. 14. In the alternative, they assert the terms "vacant" and "unoccupied" in ML-508D are ambiguous. Either way, they explain, ML-508D should not apply to their situation.

The policy, however, leaves no doubt what "unoccupied" means. ML-508D explicitly defines "unoccupied" as "an absence in excess of 72 hours." We agree with the district court that this "can only be reasonably read to refer to the absence of people." *Katopothis*, 211 F. Supp. 3d at 15 (emphasis omitted); *see Windsor-Mount Joy Mut. Ins. Co. v. Jones*, No. 07C-07-006, 2009 WL 3069695, at *6 (Del. Super. Ct. July 17, 2009) ("Considering the obvious and increased risk insurers have when insured property is without routine human presence, sporadic or irregular interaction with the property runs contrary to the concept of occupancy . . . ."); *see also Myers v. Merrimack Mut. Fire Ins. Co.*, 788 F.2d 468, 471 (7th Cir. 1986) ("'[U]noccupied' means the lack of habitual presence of human beings . . . . This construction has been followed by . . . numerous courts in many other jurisdictions . . . ."); Unoccupied, *Webster's Third New International Dictionary* (2002) ("[N]ot occupied by inhabitants[;] . . . of, relating to, or being premises on which no one is living although the furniture and fixtures have not been removed . . . ."). There is no dispute the Dahlgrens were away from their beach home for over 72 hours, which under the clear terms of the policy means the flooding occurred while the house was "unoccupied."

The Dahlgrens did ask a friend to periodically check on the house and retrieve the mail while they were away, and the parties dispute whether such neighborliness was enough to "occupy" the house under the policy. Like the district court, we need not resolve this question because the good neighbor had not been to the house in six days when Ms. Dahlgren

discovered the flooding. *See Katopothis*, 211 F. Supp. 3d at 16 n.9.

In any event, the Dahlgrens urge us to adopt the approach of the Supreme Court of Delaware and "look to the reasonable expectations of the insured," not just when a policy is ambiguous, but also "if the policy contains a hidden trap or pitfall, or if the fine print takes away that which has been given by the large print." *Hallowell v. State Farm Mut. Auto. Ins. Co.*, 443 A.2d 925, 927 (Del. 1982). ML-508D is just such a "hidden trap" or "fine print," they argue, and such deception cannot be allowed to frustrate their reasonable expectation of coverage for accidental flooding. "It is manifestly unfair to the insureds," they assert, "to permit an insurance company to bury a conflicting Endorsement at the end of the policy, which purports [to] render express grants of coverage in the policy illusory." Dahlgrens Br. 13.

We see nothing hidden or deceptive about ML-508D. It was written in plain language and listed on the cover page of the insurance policy as an applicable endorsement. And, to further draw attention to its terms, the endorsement was printed on blue paper to stand out from the rest of the policy. Windsor-Mount in no way disguised the endorsement or the conditions it imposed on coverage.

Nor is there anything surprising about endorsements like ML-508D. They are designed to prevent extensive damage from plumbing accidents that might otherwise be avoided with early detection or simple preventative measures. *Cf., e.g.*, *Windsor-Mount*, 2009 WL 3069695, at *5-6 ("Any reading of the contract results in the conclusion that the purpose of the provision in question is to protect the insurance company from the increased risk that accompanies insuring a house that does not have an occupant." (quoting *Vushaj v. Farm Bureau Gen.*

*Ins. Co. of Mich.*, 773 N.W.2d 758, 760 (Mich. Ct. App. 2009))). An unoccupied house presents a significant risk that leaking water will go unnoticed for some time, dramatically increasing the likelihood of extensive damage to property. What might be only a minor incident in an occupied house could escalate quickly into major damage if left unchecked, which is exactly what happened in this case.

The Dahlgrens essentially ask us to "destroy or twist policy language under the guise of construing it." *O'Brien*, 785 A.2d at 288 (quoting *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992)). But "creating an ambiguity where none exists could, in effect, create a new contract with rights, liabilities and duties to which the parties had not assented." *Id.* (alteration omitted) (quoting *Rhone-Poulenc*, 616 A.2d at 1196). That we cannot do.

Finally, the Dahlgrens argue ML-508D is simply "ineffective" because it was printed below a notice that Windsor-Mount did not file with the Delaware Insurance Commissioner. Dahlgrens Br. 33-34; *cf.* 18 Del. Code § 2712 (requiring insurers to file insurance forms with the Delaware Insurance Commissioner). The Dahlgrens insist that the presence of unapproved language on the same page, even separate from ML-508D, voids the endorsement.

To the extent this argument has any merit, we would still apply ML-508D in this case because the endorsement is "unambiguous and not contrary to public policy" so "there is little basis for invalidating" it. *Hercules, Inc. v. AIU Ins. Co.*, 784 A.2d 481, 501 (Del. 2001) (footnote and quotation marks omitted); *see* 18 Del. Code § 2718(b) ("Any condition, omission or provision not in compliance with the requirements of this title and contained in any policy, rider or endorsement hereafter issued and otherwise valid shall not thereby be

rendered invalid but shall be construed and applied in accordance with such condition, omission or provision as would have applied had the same been in full compliance with this title."). Indeed, no one disputes that the Delaware Insurance Commissioner approved ML-508D. And, ironically, the notice actually draws attention to the endorsement and the risks of water damage.

While the Dahlgrens suggest yet other reasons why they should prevail, they forfeited those arguments when they failed to raise them in the district court. *See, e.g.*, *Zevallos v. Obama*, 793 F.3d 106, 114 (D.C. Cir. 2015) ("Because these arguments were not made below, they have been forfeited."). We conclude, therefore, that the Dahlgrens cannot recover from Windsor-Mount under the clear terms of their insurance policy. And because we conclude the Dahlgrens' claim against Windsor-Mount fails under Delaware law, and the Dahlgrens do not appeal the judgment of the district court with regard to District of Columbia law, we do not need to consider the choice-of-law analysis further. *See USA Waste of Md.*, 954 A.2d at 1032.

IV

The appeal of the transfer order is dismissed for lack of jurisdiction. The district court's grant of summary judgment is affirmed.

*So ordered.*